# WHEELING.

## CECIL v. CLARK

and

## HALL v. CLARK.

Decided June 13, 1901.

1. TENANT—*Damages—Co-Tenant—Accounting.*

When a tenant in common has become liable for damages for waste under section 2, chapter 92, Code, by the removal of coal from the premises, the co-tenant injured may waive the tort and require an accounting for money had and received when the coal has been sold by such tenant.  (p. 471).

2. TENANT IN COMMON—*Lease—Co-Tenant—Royalty.*

If a tenant in common takes possession of the premises to the exclusion of his co-tenant and lease the same to third parties for the purpose of the mining and removal of the coal therefrom, at a specified price per ton as royalty for the coal so removed, the co-tenant so excluded may require an accounting to him for his just proportion of such royalty, as the proper measure of damage for such waste. . (p. 474).

3. TENANT—*Possession—Purchase—Compensation—Interest.*

When a tenant so taking possession and leasing the premises for operating the coal, purchases front lands in his own right and not as common property, which are absolutely essential for right of way for the removal of the coal, in accounting to his co-tenant for his proportion of the royalty when the tort has been waived, legal interest on the amount of money invested in the purchase of such front lands is a just compensation for the use thereof.  (p. 477).

4. TROVER—*Measure of Damage.*

The measure of damages in trover is the value of the property and interest thereon from the time of conversion. (p. 477).

Appeal from Circuit Court, Summers County.

Action by W. P. Cecil and others and J. R. Hall and others, respectively, against E. W. Clark and others, trustees of the Flat Top Coal-Land Association.  Decree for defendants, and complainants appeal.

*Affirmed.*

J. S. CLARK and A. W. REYNOLDS, for appellants.

FLOURNOY, PRICE & SMITH, MOLLOHAN & McCLINTIC, E. W. WILSON, and JOHN OSBORNE, for appellees.

McWHORTER, JUDGE:

As will appear in 44 W. Va. 659, (30 S. E. 216), the tract of land involved in these cases described as containing eight hundred and fifty acres, was claimed in entirety by the trustese of the Flat Top Coal-Land Association, who had taken possession thereof and leased it to the Elk Horn Coal and Coke Company and the Shamokin Coal and Coke Company, denying the right of plaintiffs to any part or interest therein; that it was there held that the defendants, the said trustees, were tenants in common, entitled to and holding eleven-twentieths thereof, with the plaintiffs, who were entitled to nine-twentieths and the causes remanded for further proceedings to be had therein. Such proceedings were had that on the 27th day of January, 1899, a decree was rendered distributing the royalties to the parties according to their ownership, as decided in said 44 W. Va., from which decree defendants also appealed, and on the 24th day of January, 1900, by this Court, said decree was affirmed. 47 W. Va. 402, (35 S. E. 11). On the 27th of September, 1900, commissioner Lively, to whom the cause had been referred, filed his report, to which report the following exceptions were filed by the plaintiffs:

"Because the said commissioner failed to include in his statement of royalties received by the trustees of the Flat Top Coal-Land Association the sum of one thousand one hundred and forty-four dollars and sixty cents paid to them October 25, 1895, as shown by the statement filed with the deposition of G. L. Estabrook, Jr., as exhibit G. L. E., Jr., 'B', page 76 of the printed record on the last appeal in these causes, and failed to charge said trustees with any part of said sum."

By the trustess, the defendants, *"First,* Because under the last decision of the Supreme Court of Appeals in this case the matters and figures contained in the said report are irrelevant.

*"Second,* Because the said commissioner has charged the defendants with large sums, being the royalties received by the defendants on coal mined from the land in controversy, whereas the said defendants are not properly chargeable with the said

royalties or liable to pay the same or any part thereof to the complainants. The complainants are entitled to damages for the waste committed only, the measure of which is the value of the coal in place, which under the circumstances of this case is the purchase price at which the coal land could have been purchased.

"*Third,* Because the said commissioner in his said report has charged the defendants with a large amount, representing interest on royalties by them, whereas the said defendants are not properly chargeable with any interest thereon.

"*Fourth,* Because the said commissioner in his said report and in his calculations therein contained, has charged the defendants with interest upon interest to the extent of four thousand two hundred and thirty-six dollars and eighty-one cents.

"*Fifth,* Because the said commissioner in his said report had adopted an erroneous basis for the calculations of the value to the complainants for the use of the defendants' front lands in connection with the mining operations upon the property in controversy, allowing to the defendants only the interest upon the cost price of the said front lands.

"*Sixth,* Because the said commissioner in his said report, statement No. 1, has failed to allow the defendants credit for a certain sum of one hundred and eighty-six dollars and forty cents, together with the interest thereon, representing the royalties upon coal mined from lands other than the land in controversy. (See Supplemental Record, page 73.)

"*Seventh,* Because the said commissioner in his said report, statement No. 2, has failed to allow the defendants credit for a certain sum amounting to one thousand five hundred and twelve dollars and eighty cents, together with the interest thereon, representing royalty upon coal mined from lands other than the land in controversy. (See Supplemental Record, page 70.)

"*Ninth,* Because the defendants, the trustees of the Flat Top Coal-Land Association, are entitled to be subrogated to all the rights of the representatives and heirs of Manilius Chapman in respect to the judgment of said Manilius Chapman against A. A. Chapman set up in the cause of Bartlett & Co. against said A. A. Chapman, in which the interest of said A. A. Chapman in the land in controversy allowed said defendants credit for the

amount of said judgment against any fund realized in respect to the A. A. Chapman interest in said land.

"*Tenth,* Because the said trustees are entitled to be subrogated to all the rights of Manilius Chapman in respect to the balance of two thousand and forty-four dollars and twenty-two cents, with interest due thereon, shown by the *hotchpot* settlement of the estate of Henly Chapman before Commissioner Broderick, filed in this cause, and said Commissioner Lively should have allowed said defendants credit for said sum with its interest as an offset in this case."

By the heirs of A. A. Chapman, deceased, "The heirs of A. A. Chapman, deceased, viz., Susan Chapman, S. J. Chapman, Fanny Steele, Ella C. Orr, W. C. Orr, and A. C. Orr, except to so much of the report of Commissioner Lively filed in this cause on the 27th day of September, 1900, as only charges the defendants E. W. Clark, etc., trustees, the Shamokin Coal and Coke Company and the Elkhorn Coal and Coke Company, with waste at the rate of ten cents per ton on the coal mined and to the allowance of anything for frontage charges.

1. Because the true rule of accounting for this waste is the value of the coal at the pit mouth.

2. Because a wrong doer is entitled to no compensation for wrong doing.

3. Because the commissioner allows a credit to the defendants above named for the expenses of operating the mines and mining properties since September, 1895."

By W. H. H. Allen: "W. H. H. Allen excepts to the report of Commissioner W. W. Lively filed in this cause on the 20th day of August, 1900, in so far as it reports or may be construed as reporting that the heirs of A. A. Chapman are entitled to any part of the moneys for which may decreed to be paid by Tyler & Doran, trustees, or Clark, trustee, or either of them as such trustee, on account of coal taken from the land in the bill and proceedings mentioned before his purchase of the interests formerly belonging to said Chapman.

"The said Allen objects and excepts to any decree at this time decreeing any part of said fund or money to said heirs on the ground that the ownership of said moneys is now in litigation between him and said heirs in this cause and that the pleadings in respect to said controversy are not now matured and in such

condition that the court can decree and settle such ownership of said money between him and such heirs."

And on the 26th day of October, 1900, when the defendant trustees tendered and asked to file their amended answer and cross bill, to the filing of which plaintiffs objected in writing; which objections were sustained and the filing of said answer and cross bill refused, and on motion of said defendants the court permitted the same to be filed and treated as an affidavit in support of the exceptions of said trustee to said commissioner's report, and it was so accordingly filed, and it being suggested to the court by E. W. Clark, trustee, that Sidney F. Tyler, one of the trustees of the Flat Top Coal-Land Association and one of the defendants herein, had resigned as such trustee and had no further interest in the causes, and that Joseph I. Doran had been appointed a trustee in his place, and also suggested the death of H. M. Bell, a defendant, and one of such trustees, the causes were abated as to said Tyler, trustee Doran was admitted as a defendant in each of said causes which were ordered to proceed against said Doran and E. W. Clark as surviving and present trustees of said Flat Top Coal-Land Association, and the causes were on that day heard upon the papers formerly read; the orders and mandates of the Supreme Court of Appeals; the report of Commissioner Lively, the depositions and papers filed therewith, the exceptions thereto, the said amended answer and cross bill treated as an affidavit as aforesaid, and upon the motion of the trustees to re-commit this cause to a commissioner for the purpose of taking further testimony and ascertaining the amount of the damages to which plaintiffs were entitled on account of waste committed on the land in controversy prior to September 5, 1895, and on motion of said trustee to give them further time to take testimony to show the proper measure of damages, which motions were overruled, and the court also overruled the first, second, third, fifth, eighth, ninth and tenth exceptions of said trustee to the said reoprt of Commissioner Lively and sustained their fourth, sixth and seventh exceptions. Overruled all the exceptions of the heirs of A. A. Chapman, deceased, to said report and sustained the exceptions of plaintiffs and corrected the report accordingly, and confirmed said report as so corrected and amended, except as to that part thereof relating to the special statement made at the instance of A. A.

Chapman's heirs, based upon a charge of fifty cents per ton for coal mined from said land which was not approved by the court. And ascertained that there was due at date of the decree on account of amounts received by the defendants trustees of the Flat Top Coal-Land Association for coal mined from the land in controversy including interest to that date, the sum of eighty-one thousand six hundred and twenty-nine dollars and forty-one cents, after allowing said trustees credit for costs of management and use of their front lands. And that there was also due on account of this interest on the amounts recovered by the decre of January 27, 1899, and on account of five thousand dollars retained by said trustees under said decree the further sum of five thousand five hundred and twenty-three dollars and fifty-four cents after allowing said trustees credit for costs of management and use of front lands since September 5, 1895. And directed George E. Price, special receiver, to collect from trustees Clark and Durand said two sums of eighty-one thousand six hundred and twenty-nine dollars and forty-one cents and five thousand five hundred and twenty-three dollars and fifty-four cents, with interest on said sums from said date of decree. And directed said trustees to pay said two sums and interest to said receiver, and directed the receiver to pay out the same as follows: To attorney for Mary E. Painter two-ninths, to attorney for Elvira Pendleton's heirs, two-ninths, to attorney for Araminta French's heirs, two-ninths, and to attorney for Sarah E. Torbett, one-ninth. And the court overruled the exceptions and objections of W. H. H. Allen and ordered the special receiver to pay over the one-half of the fund recovered for waste upon the interest of A. A. Chapman, deceased, prior to November 15, 1894, to-wit, the sum of eight thousand three hundred and eighty-one dollars and fourteen cents to the several heirs as indicated and that he retain the other half of said interest in his hands until the further orders of the court to await the determination of the questions arising upon the petition of P. W. Strother, which he filed on that day claiming that he had as attorney a contract with said A. A. Chapman's heirs for one-half the recovery in their favor as attorney's fees and praying that his lien be protected therein. Said sum, as well as the remainder of the two-ninths over and above the sum of sixteen thousand seven hundred and sixty-two dollars and twenty-seven cents the said A. A. Chap-

man's interest for waste prior to November 15, 1894, to be loaned by the receiver and the receiver was in order to collect for the Bank of Bramwell the twenty per cent. of all sums which may have been deposited in said bank to credit of these suits since the date of the decree of January 27, 1899, and directed to be held by said bank to await the determination of the questions adjudicated by this decree. And to pay out the seven-ninths thereof in the same manner as the first two sums mentioned and the other two-ninths to be loaned upon good security until the further order of the court, or to be held, and decree for costs against the defendants. From this decree the defendants appealed and assigned the following errors:

(1)  The court erred in overruling the defendants' exceptions to the said commissioner's report.

(2)  The court erred in refusing to permit the said cross-bill to be filed.

(3)  The court erred in refusing to refer the causes to a commissioner for the purpose of taking testimony and ascertaining the true measure of the damages for said waste.

(4)  The court error in refusing to grant the defendants time to take further testimony to prove additional facts bearing on the measure of the said damages.

(5)  The court erred upon the whole case by said decree of October 26, 1900, which was prematurely rendered. All proceedings in the causes previous to the last aforesaid decision of the Supreme Court and previous to said decree, had been taken with reference to an accounting for rents and profits. The testimony which had been taken in so far as it had any bearing upon the question of compensation to the plaintiffs, had been taken, the questions propounded and the answers to the witnesses consequently given with reference to an accounting for rents and profits, much being omitted which is material in ascertaining the measure of damages and the decisions of the causes in that state of the record was a practical denial of the hearing to the defendants upon the subject of the measure of damages.

(6)  The court erred in adopting the roaylties received by defendants as the proper measure of the plaintiffs' damages. Under the circumstances of this case the true measure of said

damages was the value of the coal in place as if the plaintiffs had sold the coal field to the defendants.

(7)   The court erred in refusing your petitioners subrogation to the rights of the representative and heirs of Manilius Chapman in respect to the judgment of said Manilius Chapman against A. A. Chapman set up in the cause of Bartlett & Company against said A. A. Chapman, in which the interest of said A. A. Chapman in the land in controversy was sold to one W. H. H. Allen. This judgment is one of the aforesaid claims particularly pleased and set up by your petitioners' aforesaid cross bill in which also appears in that part of the record of said cause of Bartlett & Company against A. A. Chapman which was filed with the petition of W. H. H. Allen in these causes prior to the entry of the decree of September 5, 1895, from which said first appeal was taken.

(8)   The court erred in refusing your petitioners' subrogation to the rights of Manilius Chapman in respect to the balance of two thousand and forty-four dollars and twenty-two cents, with interest thereon, shown by the *hotchpot* settlement of the estate of Henly Chapman before Commissioner Broderick, filed in these causes previous to the aforesaid decree of September 5, 1895. This is also one of the aforesaid claims which is particularly pleaded and described in the aforesaid cross bill. As to this and the next preceding assignment of error, see printed record upon the first appeal, part 1, pp. 214 and 1021.

(9)   The court erred in other particulars apparent upon the face of the record, all of which are relied upon and will be more specifically assigned at the bar of the court."

In making his report the commissioner took the royalties actually received by the defendant trustees from the lessees as the correct measure of damages and the best evidence thereof and charged the defendants therewith and crediting them with a just and proper proportion of the administrative expenses and allowing them certain amounts ascertained for the use of front lands which they had purchased for the purpose of enabling the lessees to operate the leased premises. Defendants by their exceptions contend that "the complainants are entitled to damages for the waste committed only, the measure of which is the value of the coal in place, which, under the circumstances of this case, is the purchase price at which the coal land could have been pur-

chased." By the decree of September 5, 1895, it is recited, "and it appearing from the pleadings and the depositions, that the defendants E. W. Clark, S. F. Tyler, and H. M. Bell, trustees, have collected and received from under the leases aforesaid large sums of money as royalties on the coal mined from and under said land, and it being charged in their bill that said trustees have also taken from said tract of land, timber and other material of great value and quantity and converted the same to their use, and it being claimed by the said E. W. Clark, S. F. Tyler and H. M. Bell, trustees, that they have put upon said tract of land valuable improvements at considerable costs and enhanced the value of said lands thereby, the court is of opinion that an account should be taken of said rents or royalties so received by plaintiffs (defendants) and for the timber and other materials taken by them as aforesaid, if any such timber was so taken, as well as of the improvements made on said tract of land by the said trustees, if any, and of the value of such improvements to the said tract of land. And the extent of its enhancement in value by reason of such improvements and the value of said land when the defendants entered thereon, together with all taxes paid by said defendants on said land." And the causes were referred to a commissioner to ascertain and report such facts. And by said decree it was further provided "and the heirs of Henly Chapman and William H. H. Allen being entitled to four-tenths, Sarah E. Torbett the one-twentieth of all royalties hereafter accruing and payable under the leases to the Elkhorn Coal and Coke Company and the Shamokin Coal and Coke Company under the decision herein, it is further adjudged, ordered and decreed that the said Elkhorn Coal and Coke Company and the said Shamokin Coal and Coke Company shall each pay to the Bank of Bramwell, at Bramwell, West Virginia, to the credit of these causes, four-tenths and one-twentieth of all rents or royalties payable under the said leases and each of them, for coal, timber, and for the material taken from said tracts of land from said coal company from this day until the further order of the court which clearly fixes the basis for ascertaining the measure of damages by the said commissioner. On the 27th of January, 1899, a decree was entered by the circuit court requiring the Bank of Bramwell to pay over to George E. Price, special receiver appointed in these causes, five thousand three hundred and

thirty-five dollars and sixty-seven cents of rents and royalties paid into said bank under said former decree up to November 19, 1898, as well as eighty per cent. of any other sum or sums which might be therein deposited to the credit of these causes by said coal companies under said decree of September 5, 1895, and also requiring said trustees to pay over to the said receiver the sum of eighteen thousand two hundred and sixty-seven dollars and forty-one cents of the twenty-three thousand two hundred and sixty-seven dollars and forty-one cents collected by said trustees under the suspending bond, whereby they were enabled to collect such rents and royalties instead of the same being deposited in said bank, the residue of said sum to-wit, five thousand dollars being left in the hands of said trustees, and twenty per cent. of all which might thereafter be deposited in said bank to the credit of these causes, to await the determination of the questions as to whether said trustees were entitled to any sums or amounts on account of frontage charges and expenses incurred by them in the management of said property and the question whether said trustees should be required to pay interest on the amounts so received by them, which questions were reserved for future decisions and action by the court, and said receiver was ordered to retain and loan out on good security, subject to the future order of the court, the two-ninths of the sums received by him under the decree to await the action of the court upon the question arising upon the petition of A. A. Chapman's heirs, and directing the receiver to pay the residue of said sums so received by him to the parties entitled to the same under said decree of September 5, 1895. The moneys received for rents and royalties prior to September 5, 1895, could not be distributed by the decree of January 27, 1899, because the commissioner had not then reported, and the amounts proper to be allowed to the defendant trustees for expenses, charges for front lands, etc., had not been ascertained and determined, but the basis was fixed by the decree upon which the trustees should be held to account for the waste committed by them to be the amount of royalties actually received by the trustees belonging to the plaintiffs, and why should a different principle apply to waste committed prior to September, 1895, to that committed subsequently. In the decision of January 24, 1900, 35 S. E. 15, it is said, "As to the disposition of the moneys from royalties paid prior to September 5, 1895, or

the mode of partition of the land, these subjects not being before us, remain for the action of the circuit court, and we express no opinion thereon, further than as the legal principles above given may apply to them."

The moneys here referred to belong to the parties as between the plaintiffs and defendant trustees in the same proportion and in the same way as the moneys distributed by the decree of January 27, 1899, except as to such amounts as might be charged against the portion belonging to the plaintiffs, in favor of the defendants to be ascertained by the commissioner in taking the account ordered for the frontage charges and the expenses of management. Although it is claimed by defendants in their brief that, "after September 5, 1895, mining operations were carried on with full knowledge of the eo-tendancy and of the rights of each co-tenant to receive his share of the royalties. The situation before September 5, 1895, was different, and the true measure of the damages for the waste committed presents a more different question."

This might be true if the trustees had been actually conducting the mines and producing the coal themselves bearing and paying all the expenses incident thereto, as well as assuming all the risks of the trade, it might have been difficult to so settle with them as to find what they had received as net profits, but these difficulties do not confront us for the reason that the tenants who were deriving the benefits did not themselves operate the mines or take any of the risks or pay any expenses, but simply sold the coal and received the pay therefor at a stipulated price paid to them in cash quarterly and promptly, the lessees making all the necessary expenditures in the way of equipments for successfully operating the mines and shipping the coal.

Judge Brannon in this case at page 14, 35 S. E., in referring to the decree of September 5, 1895, says: "It does not actually decreed the money at once to the Chapmans and Torbett, but it says by way of recital, if you can call it recital, and the heirs of Henley Chapman and William H. Allen, being entitled to four-tenths, Sarah E. Torbett to one-twentieth of all royalties hereafter accruing, and it directed the lessees to pay into bank, etc. * * * The decree may not be said to establish beyond recall the rights of the Chapmans and Torbett to the money, but it can be said that it repeals any claim that it gave to the trustees that

money irrevocably;" but the decree of January 27, 1899, which the Judge was then reviewing, did decree the money to Chapmans and Torbett, establishing it to be theirs beyond recall, and this decree was affirmed on appeal.

In *Williamson* v. *Jones,* 43 W. Va. 562, it is held that petroleum in place is part of the land, and syl. 4, "It is waste in a tenant in common to take petroleum oil from the land, for which he is liable to his co-tenants to the extent of their right in the land." Jones was the owner in fee of three-tenths of the land under purchase at a judicial sale when he supposed he was purchasing the whole title, but only got by his purchase three-tenths in fee, and but a life estate in the remaining seven-tenths, the remainder men not being parties to the suit in which he purchased. Under his purchase Jones took possession of the whole, excluding the remainder men in his operations for oil on the lands. He was entitled to the occupancy and control of the whole for purposes of residence, cultivation or other ordinary use not injuring the inheritance to the exclusion of everybody, but he had no right as life tenant to extract the oil or coal which was a part of the land itself, no oil wells being bored thereon when he purchased or mines opened, neither had he a right as the owner in fee of the three-tenths to bore for oil, "any more than a stranger, because the act whether done by a co-tenant or stranger, is a wrong. For this purpose he was a stranger so far as the wrongful character of the act is concerned." "Therefore we term his act waste, not technically trespass as done by a stranger. Waste is an injury to the freeholder by one rightfully in possession. This marks the distinction between waste and trespass." 1 W. & T. Lead. Cas. Eq. 1011. But the nature of the act is a tort in both cases, the same in both. Of course, a stranger wiuld be liable for trespass, or if he converts the oil from realty to personalty, the injured co-tenant may waive the trespass and go for the value of the oil, or for the money for which the trespasser sold it. JUDGE BRANNON in *Williamson* v. *Jones,* and in this case in the decision of January 24, 1900, (*Cecil* v. *Clark,* 35 S. E. 11), after holding that section 14, chapter 100, Code, does not apply to waste by joint tenant or tenant in common, in discussing the purposes of the said section and section 2, chapter 92, Code, under which latter section the defendant trustees are liable to their co-tenants and plaintiffs, the same Judge says,

"But when one takes coal, his co-tenant has title to the very coal after its severance from the land; and the taking tenant can be sued for trespass, or if he sells, his co-tenant can waive the tort and sue for the money had and received, because the one has received money from the sale of property belonging to the other * * * His act was a wrong, a waste, in violation of the right of his co-tenant; and this co-tenant can follow up the property, and base his demand on its wrongful taking and conversion."

This position held in this particular case is utterly inconsistent with the contention of the defendant trustees, "that their liability to plaintiffs can be discharged by paying a few dollars per acre for the land from which they took the coal. It has been held that the coal taken belonged to the plaintiffs after its severance, and that the plaintiffs could waive the tort and sue for the money had and received for the coal sold. The defendants have received ten cents per ton from the lessees for the coal and the plaintiffs waived the tort and asked the court to require their share of the proceeds to be paid to them. The decrees entered in these causes having fully settled and established the principle upon which the measure of damages to be recovered by the plaintiffs for the waste committed by the defendant trustees was ascertained, I deem it unnecessary to discuss the propositions and authorities so ably presented by counsel for the trustees on the question of the measure of damages. Under the circumstances in this case the basis fixed is correct and just, the plaintiff having waived the tort and sued for the money had and received. It is a well settled rule that one is entitled to interest on money from the time it should be paid to him. In *White* v. *Martin,* 1 Porter 215 (Ala.), 26 Am. Dec. 365, it is held, "The measure of damages in trover is the value of the property and interest from the time of conveyance." *Hepburn* v. *Sewell,* 9 Am. Dec. 512; *Sanders* v. *Vance,* 18 *Id.* 167; *Baker* v. *Wheeler,* 24 *Id.* 71.

The plaintiffs A. A. Chapmans' heirs filed four cross errors, three of which refer to the measure of damages for the waste, adopted by the court, and one claims that the court erred in allowing anything to the defendants for frontage charges. Of course, the first mentioned are here before disposed of, and none of them seem to be seriously insisted upon, the frontage charges are equitable and just. The second assignment that the court erred in refusing to permit the cross bill tendered by the trus-

tees to be filed. To the filing of this bill the plaintiffs filed the following objections in writing:

"1. Because all the alleged matter contained in the first ten paragraphs of said paper are matters which, if they exist, should and could have been proven before the commissioner whilst the cause was pending before him, being matter which bear upon the amount to be recovered against said trustees for and on account of the coal mined for plaintiff's share of the land in controversy.

2. Because the matter alleged in said paper would not change the result arrived at by the commissioner even if they were true, the true measure of recovery being the same whether the said trustees are held to account for rents and royalties or to pay damages for waste.

3. Because the matter contained in the remaining paragraphs of said paper present no ground for relief in favor of said trustees for the following reasons:

*a*—The said trustees are not entitled to any such right of subrogation to the judgment of Manilius Chapman against A. A. Chapman as is claimed in said paper.

*b*—The said trustees, even if they are creditors of A. A. Chapman, deceased, by subrogation as claimed, have no right to ask that the sale of A. A. Chapman's interest be set aside upon the alleged grounds set forth in said paper.

4. Because said paper comes too late and the court will not delay the cause for anything contained in it.

5. Because none of the matters alleged in said papers constitute any ground for relief in this cause, and for other reasons apparent on the face of said paper."

As stated by the appellees in their brief, "All the matters, with the exception of the attack made upon the *bona fides* of the sale to W. H. H. Allen of A. A. Chapman's one-tenth interest had already been put in the record of these cases, and upon the former appeals had been strenuously presented one way and another, but unsuccessfully, as reasons why the plaintiff should not have the relief prayed for; and there was no reason, as held by the circuit court, why the case should be further delayed on account thereof. Reference to the briefs of the defendants' counsel upon the former appeals will fully show this fact." The principal questions being raised by defendants in their excep-

tions to the commissioner's report, and this assignment receiving no special attention in the brief of appellants, it seems to have been abandoned as a distinct proposition, the said cross bill being treated as an affidavit in support of the defendants' exceptions to the report of commissioner. The third and fourth as well as the fifth and sixth assignments all have reference directly or indirectly to proof on the measure of damages and the principle upon which it should be ascertained. The defendants complain of the basis upon which deductions were made in their favor against the royalties due the plaintiffs for "frontage charges," that the basis adopted for the allowance is inadequate and unfair; "that the court allowed interest upon the cost price of the front lands as a fair return for their use, although the record shows that these front lands were absolutely essential for the successful mining of the lands in question." They claim "there is no reason or stability in such a rule," as that fixed by the commissioner and court. And say there is evidence in the record to the effect that a cent and one-half a ton would be a fair price for a right of way across these front lands to take the coal from the lands in controversy, and that this testimony was disregarded by the circuit court when it adopted the "uncertain basis" of interest on the cost price of the front lands. The evidence referred is of necessity very uncertain, more a guess than otherwise as to what should be allowed. Mr. Clark, the vice-president and treasurer of the Flat Top Coal Land Association estimating the value to the Elkhorn Coal and Coke Company of the operation of this part of the improvements of this company which is located on the "Carter tract;" he says, "I suppose a fair figure would be about half a cent a ton for the coal mined. * * * * That is as close as I could estimate it. It is rather difficult to put a valuation in that way." In the case of the other two tracts the "Ward and Belcher tract," upon which all the improvements, tipples, tracts, coke ovens, houses, stores of the Shamokin Coal and Coke Company were located, the witness estimated if the basis of compensation was a certain per centage of the royalty at between one and two cents per ton of coal shipped over and through such improvements, certainly not less than one, and that it might be as high as two cents per ton. Witness further said, "Of course, it is a matter of negotiation. You have got to pay whatever the owners of the front land demands." So after all it seems to be largely a question of conscience with the owner

of lands in front of coal lands the use of which is absolutely essential to give the owner of the coal an outlet for the production of his mines as to what he will demand for such use. Such front lands may be of absolutely no value in themselves to the owner, barren of coal, timber, or any other thing of value and wholly unfit for cultivation, and yet because of their location in front of valuable coal deposits which cannot be removed without their use, they become of great value to the owner. The relation occupied by the defendant trustees of co-tenants with the plaintiffs, and purchasing the front lands as a part of their necessary preparations for wrongfully removing the coal from their joint lands, hardly places them in the position that a third party would occupy as independent owner of said front lands who would have a right to dictate the terms on which the same could be used by the owners of the coals in the rear lands for the removal thereof. These front lands were necessary to enable the owners of these coal lands the plaintiff and defendants to operate and remove the coal and the defendants who were claiming all the coal purchased the land for the purpose of operating the mines of which they were the owners of but eleven-twentieths. The lands were purchased alone for the purpose of facilitating the removal and shipping of the coal and should be treated as a part of the expenses in providing right of way and conveniences for getting out the coal, and it would appear that legal interest on the sum so invested would be a fair compensation to be paid by the co-tenants who were attempted to be excluded by those who went into possession and committed the waste, as long as they choose to hold the legal title solely in themselves and not to treat it as common property by permitting the plaintiffs to share in the purchase thereof in equitable proportions.

The seventh and eighth assignments that the court erred in refusing defendants subrogation to the rights of the representatives and heirs of Manilius Chapman in respect to the judgment of Manilius Chapman against A. A. Chapman set up in the cause of Bartlett and Company against said A. A. Chapman in which the interest of said A. A. Chapman in the land in controversy was purchased by W. H. H. Allen, and in referring defendants subrogation to the rights of Manilius Chapman in respect to the balance of two thousand forty-four dollars and twenty-two cents and interest thereon by the *hotchpot* settlement of the estate of Henley Chapman before Commissioner

Broderick.   Manilius Chapman filed his petition in the credi-
tors' suit of George Bartlett & Co. against A. A. Chapman pend-
ing in the district court of the United States for the district of
West Virginia, setting up his judgment against A. A. Chapman
as a lien upon the interest of said A. A. Chapman in the lands·
in controversy here, being the one undivided one-tenth.   On the
31st of May, 1890, a decree was entered for the sale thereof to
satisfy the said judgment of Manilius.   On the 15th of Novem-
ber, 1894, it was duly sold for the sum of two thousand eight
hundred dollars, W. H. H. Allen being the purchaser.   On the
4th of December, 1894, the sale was by decree of said court con-
firmed and a deed directed to be made to the purchaser, retain-
ing vendor's lien to secure the payment of the residue of the pur-
chase money, being one thousand four hundred dollars, the one-
half thereof.   The cash payment having been under direction of
said court after payment of the costs of the petitions and of sale
applied to the said judgment of Manilius by payment to his ad-
ministrator.   Allen afterwards paid the deferred payment of one
thousand four hundred dollars and interest and received his
deed for the interest so purchased, and the residue of the pur-
chase money applied on the judgment of Manilius Chapman by
payment to his administrator after payment of a small balance
on a prior judgment against said A. A. Chapman.   So that the
interest of A. A. Chapman in this land was sold and the pro-
ceeds as far as proper applied to the payment of the judgment
set up against it by Manilius Chapman.   David E. Johnston, to
whom Manilius had conveyed by special warranty his interest in
this tract of land claiming it to be the one undivided half of
said tract, in his answer filed in the cause claimed subrogation
to the rights of Manilius Chapman as new matter and asking af-
firmative relief, which he failed to receive.   This defense being
overruled in former decrees which had been affirmed on appeal
concludes not only Johnston but the defendant trustees who are
in privity with him, not only as to every matter which was of-
fered and received to sustain or defeat the claim, but also any
other admissible matter which might have been used for that
purpose.   And the adjudication is a bar or estoppel against the
same as a defense.   *Wandling* v. *Strand,* 25 W. Va. 692, (syl.
pt. 4) ; *Pool* v. *Dilworth,* 26 W. Va. 583; *Camden* v. *Werminger,*
7 W. Va. 528; *McCoy* v. *McCoy,* 29 W. Va. 794; *Seabright* v.
*Seabright,* 33 W. Va. 152; *Brown* v. *Hevener,* 34 W. Va. 774.·

In *Sayre* v. *Harpold,* 33 W. Va. 553, (syl. pt. 1), "An adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject matter of the action. It is not essential that the matter should have been formerly put in issue in a former suit, but it is suffiicent that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata."* In case at bar the defendant trustees had filed their very elaborate answer to the bill and also an answer to the supplemental bill, but set up no such defense as is now sought to be made after their vendor, David E. Johnston has failed in the same defense, and they have no better claim than he under whom they claim. The judgment of Manilius Chapman was a general lien upon all the real estate of A. A. Chapman and was not a special lien on the tract or interest of A. A. Chapman here in controversy, and a proceeding was had to enforce that judgment against this land. No steps were taken to sequester the rents and profits and apply the same to the said judgment or the debts of said A. A. Chapman, and any part of the realty such as the coal or timber which was severed from the land, immediately on being severed became the property of the heirs in whom the title to the realty was vested. In *Williamson* v. *Jones,* 43 W. Va. 562, at page 569, it is said: "Of course, when that which is a part of the realty is unlawfully severed, it belongs to him who has the first vested estate of inheritance at the date of severance, as he owns it. *University* v. *Tucker,* 31 W. Va. 621, (8 S. E. 410); Fcarne on Rem. 341; *Whitfield* v. *Bewit,* 2 P. Wms. 240; 1 Lomax. Dig. 56. The owner of the severed chattel can alone seize it, or bring trover for its conversion, as it came from the inheritance, or claim the thing itself by replevy or detinue, or bring trespass *de bonus asportatis,* for damage for the taking of it, or *assumpsit* for money had and received from it. Nor does it matter whether the timber is cut by a stranger or by the tenant (for life) himself, since the tenant cannot convey any interest in it, when severed. 1 Washb. Real Prop. 119; 1 Lom. Dig. 59; Freem. C. ss. 297-302. For the same reason the co-tenant doing waste neither owns nor can sell what is not his." "If at the time of the improper working, there is any person in

being entitled, defeasibly or indefeasibly to an estate of inheritance, the property in the severed chattels, or the amount to be accounted for, will belong absolutely and immediately to such person, or, if more than one, to the first of such persons."

McSwinney Mines, ch. 3, s. 2b, p. 99; 1 Lom. Dig. 56-57; *Pigot* v. *Bullock,* 1 Ves. Jr. 479; *Birch-Wolf* v. *Birch,* L. R. 9 Eq. 683; Hogg's Pl. and Forms, (2 Ed.) s. 33. Manilius Chapman conveyed to Johnston with covenants of special warranty by which Johnston took only such interest or estate as was vested in Manilius Chapman at the time of conveyance, and an ouster by any other title would not give Johnston a cause of action against Chapman on his warranty, only an eviction by some one claiming under said Chapman would constitute a breach of his covenant, and it is not pretended that this has occurred. *Weston M. & M. Co.* v. *Cannel Coal Co.,* 8 W. Va. 406. Appellants contend that this is a partition suit, and that "if we modify our supposed case and insert the heirs of A. A. Chapman as plaintiffs instead of A. A. Chapman (still considering, however, that Manilius is alive and the defendant) the right of Manilius to deduct the amount of his judgment is not affected. The heirs succeeded to the land of their father A. A. Chapman, but took it subject to the lien of the judgment, and in this partition suit they are under the same liability to pay and satisfy this judgment as their father would have been." How far the damages for waste secured by the heirs of A. A. Chapman would be liable to Manilius Chapman on account of this judgment is a question not before the court and is immaterial, as between Manilius and the defendant trustees, they have all the right, title and interest of Manilius Chapman in the tract of land, which came to them through E. W. Clark and wife. They must look to their vendor, if they have not all they bought, they cannot complain of the misrepresentations of Manilius Chapman to his vendee, David E. Johnston. "The vendee of land cannot claim in a foreclosure suit a deduction from the mortgage money, on the ground that his vendor, who was not the mortgagor, misstated the number of acres of the land conveyed, and that the vendor, of such vendor who was the mortgagee and complainant, when he sold such lands, made a similar misstatement." *Davis* v. *Clark,* 33 N. J. Eq. 579; *Shambless* v. *Miller,* 15 La. Am. 713; *Powell* v. *Hays,* 31 La. Ann. 789. Counsel for W. H. H. Allen, purchaser of the one-fourth interest of A. A. Chapman's heirs, intimate,

but do not insist that he is entitled to the damages for waste done upon said interest prior to the date of his purchase of said interest, when he purchased he took the land as it was, that part of it which had been severed prior to the date of sale, became personalty the moment it was severed and was the property of the heirs of A. A. Chapman. I see no error in the decree and it is affirmed.

*Affirmed.*