# CHARLESTON.

UNITED FUEL GAS COMPANY *v.* HAYS OIL & GAS COMPANY *et als.*

(No. 6403)

Submitted April 16, 1929.    Decided April 23, 1929.

*S. P. Bell* and *L. E. Given*, for appellants.

*Raymond Dodson, B. J. Pettigrew* and *Harold A. Ritz*, for appellee.

HATCHER, JUDGE:

In this case the plaintiff, alleging clear title to a tract of 8 1/3 acres, seeks to restrain the defendants from drilling a well thereon and to cancel the defendants' title papers thereto, as clouds on the plaintiff's title. The defendants dispute the title of plaintiff and contest the jurisdiction of equity. Both parties trace their claims to a common source, Daniel Polsley and James S. Connell. In 1854 Polsley and Connell granted

426 acres to Samuel Estep, who in 1860 conveyed the tract to John Goad, father of the defendant, John Goad. The defendants claim under the Estep title and say the parcel in dispute is within the 426 acres. In 1865, Polsley and Connell conveyed a tract of 844 acres to Wm. E. Green, which is north of and contiguous to the Estep boundary. The plaintiff has an oil and gas lease on a portion of the Green tract and contends that the disputed parcel is within that portion. The 8 1/3 acres is a narrow strip, 10 by 130 rods. It lies between different locations of the division line between the two tracts.

As there is some ambiguity in the calls for the corner trees on the southern line of the Green tract, and as the Green title must yield to the Estep description, the latter being the older grant, the Estep description only will be given. It is as follows:

> "Beginning at a lynn, red oak and two dogwoods, (corner to a survey made for Simon Oxer) on the Steele and Donally line, thence with said line N. 25 W. 160 poles to white oak, chestnut oak and dogwood, thence N. 65 E. 452 poles, crossing the left hand fork at 380 poles to a birch, two beeches and a lynn on top of the ridge, east of said left hand fork thence S. 10 E. 170 poles to a small stone on the point of a ridge; white oak, black oak and hickory pointers corner to a survey made for Simon Oxer, thence with Oxer's line S. 65 W. 389 poles crossing left hand fork at 63 poles to the beginning."

It will be noted that the northern and southern lines of this survey are parallel. This circumstance is not merely casual, as in a title bond executed by Polsley and Connell to Estep in 1850 it was expressly stipulated that these lines should be parallel. The southern corners, the southern line, the western line, and the northwestern corner of the Estep tract are all clearly established on the ground and are not in dispute. The trees called for at its northeastern corner are gone, and its northern line is not definitely established on the ground. The plaintiff contends for a stone marked "S. E." as the northeast corner of the tract, and for an old marked line extending therefrom, as the northern line, which,

if adopted, would include the disputed parcel in the Green tract. There is no evidence of how the "S. E." stone became marked. Defendant Goad testifies that there are two other stones similarly marked on the 426 acres and that the other two are not at corners of the tract. The "S" is a Roman letter while the "E" is in script. Surveyors for the defendants say that the marking was not made by a surveyor. One tree was blocked along plaintiff's line which had been marked about 1852. This line is not parallel to the southern line of the tract, and the "S. E." stone is not "on top of the ridge" as the original corner was located. The defendants repudiate the stone corner and contend for an old marked line which is about 10 rods north of the plaintiff's line, and which would include the 8 1/3 acres in the Estep tract. This line also does not terminate on top of the ridge, and the evidence is conflicting as to whether it parallels the southern line. Several trees were blocked along this line which were marked about 1856. The evidence raises an issue as to the location of the corner of the Estep tract and as to which marked line, if either, was marked as an original line thereof. It therefore appears that the title of plaintiff to the land in question is not "clear as a matter of law", but depends upon a question of fact. In such case, the fact should be determined by a jury and not by the court, and the case is not within the rule of *United Fuel Co.* v. *Townsend,* 104 W. Va. 279, and kindred cases. See *Ephraim Cr. Co.* v. *Bragg,* 75 W. Va. 70; *Myers* v. *Bland,* 77 W. Va. 546, 548-9.

Plaintiff attempts to show acquiescence by the Goads in the line running from the "S. E." stone. It produces evidence that an old fence was built along this line by the elder Goad and Green more than forty years ago and that this fence was regarded by both parties as the division line and was farmed up to by Green. There is evidence for defendants, however, that the fence was near the line which they advocate. The fence has been gone for many years and the location thereof is not so definitely established as to make it merely a question of law for the court. Therefore, the plaintiff's contention of acquiescence cannot prevail in this suit.

Plaintiff also contends that the defendants are estopped to deny the authenticity of the stone corner. This contention is based on the following facts. The elder John Goad died in 1887 devising the 426 acres to his wife, Mary. In 1895 she granted 49 1/2 acres situate in the northeast corner of this tract to her daughter, Fannie Robinson. It is admitted by defendants that Mrs. Goad intended to convey to her daughter all of the tract in that corner. The corner trees being gone at that time, the "S. E." stone was pointed out by Green to the surveyor of the 49 1/2 acre tract as the division corner, and adopted by him as such. In the deed to Mrs. Robinson the stone is referred to as a corner of the Green tract. Defendant John Goad was with the surveyor when he established the stone as a corner of the Estep tract. About 1907 defendant Goad acting as a commissioner in the partition of the Green lands signed a report which designated the stone as a corner of the Green tract. As defendant Goad was not "vested with a direct and immediate interest" in the land in controversy either in 1894 or in 1907, his acts in relation thereto do not constitute an estoppel. *Napier* v. *Coal Company*, 97 W. Va. 247.

Defendant Goad secured his claim to the 8 1/3 acres in 1915 by a quit claim deed from his mother, Mary Goad. The other defendants hold in privity with him. The plaintiff further contends that by intendment of law, Mary Goad included the disputed strip in the conveyance to Fannie Robinson in 1894 (citing *United Fuel Company* v. *Townsend*, 104 W. Va. 279, 282-3, and cases there referred to) ; that defendant Goad acquired no title whatsoever by the deed of 1915; that the plaintiff is in possession of the 8 1/3 acres, and that its possession should be protected under *Lumber Company* v. *O'Dell*, 71 W. Va. 206. The possession relied on by the plaintiff is that arising from a producing gas well on its lease about 1,000 feet north of the 8 1/3 acres. The plaintiff has no actual possession of the strip. The possession protected in the *O'Dell* case, *supra*, was the possession of the owner of the land under an undisputed title. If it be admitted that defendants have no title, plaintiffs cannot prevail herein, since it cannot be said as a matter of law that the plaintiff is

the owner of and has an undisputed title to the oil and gas which it seeks to protect.

Plaintiff relies on *Carbon Black Company* v. *Ferrell*, 76 W. Va. 300, 304, and allied cases as sustaining equity jurisdiction in this case. In those cases the rival claimants held under the same lessor; here they hold under hostile titles. Plaintiff also contends that *United Fuel Company* v. *Cabot*, 96 W. Va. 387, is "exactly like" this case so far as jurisdiction is concerned. This case is essentially different from that one, however, in that the litigants here do not hold immediately under the same title, and the defendants here have no claim whatsoever to the land where the well of plaintiff was drilled. Consequently, they would have no right to protest the development of the plaintiff's lease so long as it was not made on the 8 1/3 acres. Other cases cited by plaintiff to support jurisdiction are also based on facts patently different from those presented here.

Being of opinion that equity is without jurisdiction herein, the decree of the lower court is reversed, and the plaintiff's bill is dismissed.

*Reversed; bill dismissed.*