The United Fuel Gas Company *v.* L. V. Koontz *et al.*

(No. 7513)

Submitted April 19, 1933. Decided May 2, 1933.

612

*Koontz, Hurlbutt & Revercomb* and *H. L. Carney,* for appellants.

*Harold A. Ritz* and *B. J. Pettigrew,* for appellee.

WOODS, JUDGE:

This suit was brought for the purpose of enjoining L. V. Koontz and Columbian Carbon Company from proceeding further with the drilling of a certain gas well upon a tract of fifty-four acres, near Clendenin, Kanawha County, and to cancel certain purported title papers as clouds upon plaintiff's superior title to the oil and gas underlying said tract of land,

upon the theory that the fifty-four acre tract is covered by plaintiff's 238-acre lease, executed on November 21, 1912, for a period of ten years by L. V. Koontz, in his own right, and as attorney-in-fact for L. K. Koontz, Ada Koontz, J. W. Koontz, Martha Koontz, J. A. Osborne and Sarah C. Osborne, as lessors. Plaintiff, on August 28, 1922, entered upon the premises covered by its lease (but not upon any part of said fifty-four acre tract) and drilled a producing gas well thereon, which has continuously since said date, produced gas in paying quantities. The circuit court, after finding that plaintiff's lease covered the acreage in question, decreed that plaintiff was entitled to the well, which Koontz, by agreement with United Fuel Gas Company, had been permitted to complete; with the further finding of the court that M. F. Osborne, who held an outstanding ⅛ in fee in the fifty-four acres, was entitled to ⅛ of the usual royalty. L. V. Koontz, Sarah C. Osborne, M. F. Osborne and Columbian Carbon Company prosecute this appeal.

Does equity have jurisdiction? We note in *Gas Co.* v. *Cabot,* 96 W. Va. 387, 391, 122 S. E. 922, 924, Judge Lively speaking for the Court, that "Where there are a senior and junior oil and gas lease upon the same land from the same owner, equity has jurisdiction at the instance of the one in possession to remove and cancel one as a cloud upon the title of the other, to preserve the status pending the litigation, and to settle the equitable rights between the parties. *Reserve Gas Co.* v. *Carbon Black Mfg. Co.,* 72 W. Va. 757, 79 S. E. 1002; *Smith* v. *Root,* 66 W. Va. 633, 66 S. E. 1005; *Urpman* v. *Lowther Oil Co.,* 53 W. Va. 503, 44 S. E. 433; *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84, 34 S. E. 923." The fact that there was outstanding ¼ in fee, as to the fifty-four acres, at the time of the lease for 238 acres—Duling and wife having a ⅛, and M. F. Osborne a ⅛—does not deprive the plaintiff of the right to come into equity to remove cloud to the extent of its interest in the tract. The case of *Gas Company* v. *Hays Oil & Gas Co.,* 107 W. Va. 255, 148 S. E. 76, is quite different in that the plaintiff did not have an established right, relying upon adverse possession. *Gas Company* v. *Hays Oil & Gas Co.,* 111 W. Va. 596, 163 S. E. 443. The demurrer to the bill was properly overruled.

The merits of the case go mainly to the question of whether or not the fifty-four acre tract is in fact within the terms of the lease of 1912. The property leased is described as bounded on the north by "lands of C. & C. Ry."; on the east by "lands of Paul Lands"; on the south by "lands of Paul Lands"; on the west by "lands of Sarah C. Osborne"; and "containing 238 acres, more or less". No reference is made therein to any title papers, nor to any former lease. However, witness Price, who took the lease of 1912, testified that it was in fact a renewal of the 1904 lease (for ten years), which after using the same adjoiners, continued "and being same land conveyed to the first parties by John and James Samples by deed bearing date ———". A reference to this deed shows that a half interest was conveyed thereby to the aforesaid fifty-four acres, as well as the fee in two other parcels of land, admittedly within the terms of the lease. At the time of the 1912 lease the lessors held title to ¾ of the fifty-four acre tract—the Dulings and M. F. Osborne owning the ¼. The defendants object strenuously to reference to the lease of 1904, claiming that the plaintiff is thereby permitted to vary the express terms of the contract lease of 1912. It is apparent that the trial court considered such evidence, since he made a specific finding that the fifty-four acres were included in the lease of 1904, as well as that of 1912. But be that as it may, defendants' position likewise weighed heavily against their own interests. They contend that the adjoiners limited the lease on the east and south by the Work and Curren line, which runs approximately northeast and southwest. They point out that the predecessors of Paul owned a 50,000 acre tract to the east of the Work and Curren line, and that therefore when Paul lands are referred to it meant all lands east of and contiguous to said line. It must be remembered, however, that 54 acres of the James Adkinson patent for 100 acres, dated 1836, was to the east of the Work and Curren line, and that this fifty-four acres comprises the tract involved in this proceeding. The 50,000 acre tract aforesaid, 5,000 of which later came into Paul's hands, was forfeited to the State of Virginia for non-payment of taxes from 1832 to 1840, and 15,000 acres thereof was sold by commissioners of delinquent lands in 1849 to Lewis Ruffner, Paul

tracing his title (purchased in 1888) back to Ruffner. It is alleged and testified to on behalf of defendants that taxes have been paid regularly on the Adkinson 100 acre patent; and, further, that they have held the fifty-four acre tract adversely and continuously for more than ten years. All this tends to negative the contention of defendants that the lands east of the line were always referred to as the Paul lands. The finding of the circuit court, according to our views, was wholly proper in this respect.

The King Land Company, which, as intervenor, set up a claim to the fifty-four acres through Paul, offered no proof in opposition to defendants' evidence of adversary possession. The prayers of its original and amended and supplemental intervening petitions were therefore properly denied.

The trial court gave effect in its order to plaintiff's contention that L. V. Koontz' ⅛ interest, acquired from the Dulings in 1914, after the execution of the lease, inured to the benefit of the plaintiff. The lease carries a provision which amounts to an express waiver of any implied warranty of title as to any interest in the premises that may be outstanding. This provision reads: "Said lessee shall not be required in any event to increase the rate of said gas well payments or said royalty of oil by reason of any royalty or interest in said oil or gas that may have been heretofore sold, reserved, or conveyed by said lessors, or their predecessors in title, or otherwise. And any such outstanding royalty or interest shall be first deducted from the royalties and rentals above provided to be paid or delivered." We do not see wherein the after-acquired Duling interest would inure to the lessee because there was no implied covenant of general warranty or quiet enjoyment in said lease. *Western Mining etc. Co.* v. *Peytona,* 8 W. Va. 406, 445-7.

As to the ⅛ Duling interest, Koontz now stands on a parity with M. F. Osborne. In speaking of the trial court's ruling in regard to Osborne's ⅛ interest, the plaintiff takes the position that the rule of estoppel recognized in a number of our cases applies. *Paxton* v. *Benedum Trees,* 80 W. Va. 187, 94 S. E. 472; *South Penn Oil Co.* v. *Haught,* 71 W. Va. 720, 78 S. E. 759; *Cecil* v. *Clark,* 49 W. Va. 459, 39 S. E. 202; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411. Also the

recent case handed down by Circuit Court of Appeals, Third Circuit, of *Germer et al.* v. *Donaldson,* 18 Fed. (2d) 697, which is based upon the *Haught* case, *supra.* But do the foregoing cases apply under the circumstances of the instant case? This Court in the *Haught* case recognized that one joint tenant of oil and gas, having no right to extract it from the earth without the consent of his co-tenant, cannot confer such right upon his lessee. And we have held that an injunction will be granted to restrain the lessee of one joint tenant from removing the gas from the jointly owned lands, where the element of drainage is not involved. *Law* v. *Heck Oil Co.,* 106 W. Va. 296, 145 S. E. 601. Nor will a court compel a co-tenant to lease his interest. *York* v. *Warren Oil & Gas Co.,* 191 Ky. 157, 229 S. W. 114; *New Domain Gas Co.* v. *McKinney,* 188 Ky. 183, 221 S. W. 245; *Lanyon Zinc Co.* v. *Freeman,* 68 Kan. 691, 75 P. 995; *Gulf Refining Co.* v. *Carroll,* (La.) 82 So. 277; *Medina Oil Co.* v. *Murphy,* (Tex.) 233 S. W. 333. It is the contention of the appellants that the decree giving Osborne ⅛ of the royalty or rental in effect places upon his interest a lease, making him a lessor, although he never joined in the lease. So far as the record discloses, the plaintiff never assumed any risk in the drilling—had the well been a dry hole, it would not have lost anything. Therefore the question of estoppel, as set out in the cases cited by the plaintiff, does not enter into the case so far as Osborne's ⅛ interest is concerned. Such also applies to the after-acquired Koontz interest of ⅛.

The decree is reversed in so far as the after-acquired interest of Koontz and the interest of M. F. Osborne are concerned, and the case remanded for the purpose of fixing the interests of the several parties in conformity with the principles hereinbefore set out. In all other respects the decree is affirmed.

*Affirmed in part; reversed in part; remanded.*