# Staunton.

## DAVIS AND OTHERS v. OWEN.

### September 12, 1907.

1. ADVERSE POSSESSION—*Hostile Claim—Possession Taken by Mistake.*—
   In this case, land was conveyed to school trustees in 1873 for
   school purposes, and they erected a school house thereon, and a few
   years thereafter the alienee of the grantor of the residue of the
   tract enclosed it, and, by mistake, cut off with the school-house lot
   more land than was conveyed to the trustees; and the trustees,
   holding the legal title to the land and the right to the possession
   thereof, gave permission to a religious congregation to worship there
   and also to erect a church and bury their dead on the school-house
   lot. The congregation, intending to confine themselves to the school-
   house lot, erected a church on the lot, but, in doing so, encroached
   upon the land cut off as aforesaid by mistake, and also buried some
   of their dead thereon, about eight years before the institution of
   this suit. All that was done upon the lot by the congregation was
   after permission first obtained from the school trustees. The
   alienee of the grantor of the residue of the original tract had his
   land surveyed shortly before the institution of this suit, and dis-
   covered the above mentioned mistake, and notified the congregation
   that he claimed all the land not included in the grant to the school
   trustees. This suit was then brought by the trustees of the con-
   gregation to quiet their title to the whole lot cut off, claiming title
   by adverse possession, and to enjoin said alienee from disturbing
   their possession. The school trustees were made parties defendants,
   and they disclaimed all title to any of the land except that originally
   conveyed to them. The Circuit Court dismissed the bill of the com-
   plainants.

   *Held:* The complainants' right of possession is subordinate to and de-
   pendent upon the right of possession of the school trustees, who
   disclaim title to the land in controversy, and they have not title by
   adverse possession. First, because not of sufficient duration, and
   second, because possession taken by mistake, and not under a claim
   of right, cannot ripen into adverse possession, and hence their bill
   was rightly dismissed.

2. Estoppel—*Ignorance of Facts—Possession Taken by Mistake.*—The owner of land encroached on by a church building and cemetery, upon ascertaining, for the first time, that there has been such encroachment, is not estopped from asserting his title thereto, when, at the time of the encroachment, both he and the parties encroaching thought that the building and cemetery were on the land of an adjacent owner who had consented thereto.

Appeal from a decree of the Circuit Court of Bedford county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*N. T. Goldberry,* for the appellants.

*Miller & Lowry,* for the defendants.

Cardwell, J., delivered the opinion of the court.

The facts out of which this appeal arises are as follows: In the year 1873, Thomas T. Munford was seized and possessed of a boundary of real estate in the county of Bedford, Virginia, near Forest, containing several hundred acres, and on the 3rd day of June of that year, Munford and wife executed a deed conveying to Edward S. Hutter and two others, as school trustees of Forest District, a portion of said tract of land, for the purpose of building a public free school for the benefit of the colored people of that district. The deed conveyed to the trustees named a specified piece of ground, definitely described by metes and bounds, beginning at a definite point, and running thence in certain directions, and as containing 3 roods, 35 poles.

After that deed was made and recorded, Munford and wife conveyed to one Murrell all the residue of the tract of land from which the "school-house lot" had been cut off. Sub-

sequently C. H. Owen became the successor in title to the land conveyed to Murrell, containing 224 a., 3 r., 12 p., by virtue of a deed dated August 2, 1898, from a commissioner of the Circuit Court of Bedford county in a chancery cause therein pending. This 224 a., 3 r., 12 p., thus conveyed to Owen, is described as lying contiguous to and adjoining the school house lot, which had theretofore been conveyed to the school trustees of Forest District.

The deed to the trustees for the school-house lot, after setting out that the conveyance was for the purpose of building on the lot a public free school-house for the benefit of the colored children of the district, under the supervision and control of the school trustees, contains this clause: "Provided, however, and the condition of the foregoing deed is, that if said granted premises are occupied for any purpose excepting for a school or church for the improvement and free education of the colored people of said school district, then this deed shall become void, and said premises revert to said parties of the first part, their heirs and assigns."

The school trustees took possession of the lot of land conveyed to them, and built thereon a house, to be used for a school for colored children in Forest District. Before the school-house was built, however, the colored people in the community approached the school board and offered to contribute to the erection and maintenance of the house, provided the school board would permit the colored people to hold religious services therein, which was agreed to, and the organization, under the name of Altha Grove Baptist Church, apparently controlled the religious services conducted thereafter on these premises.

It further appears that, after the erection of the school-house, a rail fence was built on the residue of the Munford farm, which cut off from the remainder of the farm not only this school-house property of 3 r., 35 p., but in addition thereto and adjoining the school-house lot and between it and the rail fence, a piece of land containing 1 1-14 acres. At the time Owen ac-

quired title to the Munford farm, he employed a surveyor to survey its boundaries and locate the line between it and the school-house lot, and when making the survey, instead of running around the school-house lot according to the metes and bounds in the Munford deed, the surveyor "faced" the school-house lot and deducted the acreage of the lot (3 r., 35 p.) from the land he surveyed for Owen. Subsequently, a controversy having arisen between Owen and the trustees of Altha Grove Baptist Church (not the trustees of Forest School District) as to the boundary line between the school property and that of Owen, the latter employed a surveyor to ascertain exactly the location of the line. This survey was made in May, 1904, and shortly thereafter Alex. Davis and others, appellants here, styling themselves "Trustees of Altha Grove Baptist Church and colored school of Bedford County,' filed their original bill, enjoining Owen from interfering with or trespassing upon the school-house property or the parcel of land lying between it and the rail fence—in other words, to quiet the title claimed by appellants to the land lying outside the rail fence and including the school-house lot—alleging that Owen was threatening to cut and remove all the standing timber upon this land, claimed by appellants by virtue of the deed from Munford and wife to the trustees of Forest School District, and by adverse possession. Thereafter, they filed an amended bill, and still later an amended and supplemental bill, to which they made not only Owen, but F. W. Nelson and two others, the then school trustess of Forest District, under the general free school system of the State of Virginia, parties defendant, and repeating the charges of the original bill, that Owen was trespassing or threatening to trespass, on the disputed property, whereby it would be irreparably injured, etc.

To each of these bills Owen filed his demurrer and answer, and Nelson and others, school trustees of Forest School District, also demurred and answered. In his answer Owen disclaims any right, title or interest in the school-house lot, and denies

having trespassed thereon or interfered with its peaceful and quiet enjoyment for the purposes for which the lot was originally conveyed to the school trustees of Forest School District, but does claim the 1 1-14 acres of land between the school-house lot and the rail fence. Nelson and others, in their answer, while claiming title to the school-house lot, the school-house thereon and the possession thereof, by virtue of the deed from Munford and wife to their predecessors in office, particularly disclaim any right to the parcel of land lying between the school-house lot and the rail fence, or to the possession thereof, and deny that Owen has in any way trespassed upon or injured the school-house lot, or has ever threatened to do so, as charged in appellants' bills. They further deny that the school-house lot was conveyed for any purpose other than for erecting a school-house thereon for educating the colored children, and deny the right of appellants to any control whatsoever over the property.

The demurrers to the several bills having been overruled, the cause was heard upon the bills, the answers thereto, and the evidence taken on behalf of both parties; whereupon, the Circuit Court dissolved the injunction theretofore awarded in the cause, and dismissed the bills, and from that decree the case is brought here on appeal.

It is needless to review the numerous assignments of error in the petition for the appeal and elaborately argued, as appellants utterly fail to show that they are entitled to the relief they ask.

They claim, not only the school-house lot of 3 r., 35 p., but the parcel of land lying between that lot and the rail fence, containing 1 1-14 acres. They claim title to the school-house lot by virtue of the deed from Munford and wife to the school trustees of Forest School District; that the paramount object of the conveyance was for religious purposes; and that they have had possession of the whole property—not only the part conveyed, but the 1 1-14 acres between it and the rail fence—for

a period of over thirty years, which possession has been exclusive, open, notorious and hostile, and under color of title.

In the first place, the appellants' right, if any, to this school-house property, or the possession thereof, is, and has all along been, dependent upon and subordinate to the rights of the school trustees. The legal title to the property is in the school trustees. The right to the possession of the property is in them, and this was recognized by all parties in interest, as shown conclusively by the admitted fact that when the colored people desired to hold religious services upon the property, they sought and obtained permission of the school trustees for that purpose. When they desired to erect a church on the property, they sought and obtained permission from the school trustees, and appellants have not shown a shadow of legal title to the 1 1-14 acres of land between the school-house property and the rail fence, or any sort of possession thereof which could have ripened into title by adversary possession.

From the pleadings and the proof in the cause, it clearly appears that it was only some eight or nine years prior to the institution of this litigation when permission was granted to the Altha Grove Baptist congregation to erect a church on the lot conveyed to the school trustees, and to remove the school-house to another point on the property. This they did, but erected the church partly on the land claimed by Owen in this suit, which was not conveyed to the school trustees by Munford and wife. About the same time, the members of Altha Grove Baptist Church commenced to bury their dead on what was supposed to be the school-house lot, and this grave-yard likewise encroaches upon the land claimed by Owen.

It further appears that when a survey of the school-house lot was made in May, 1904, in running the dividing line between it and the land of Owen, it was found that a part of the church building and a part of the grave-yard were located on Owen's land; whereupon, he directed the surveyor to "drop back" and run the line in such a way as to put the whole of the

building on the school-house lot, and offered, in his answer filed to the original bill in this cause, to release all claim he had to that part of the grave-yard which is on his land; but these offers of settlement of the controversy were declined by appellants, and they assert, as stated, a claim to the whole of the land lying outside of the rail fence and including, not only the school-house lot, but the 1 1-14 acres, notwithstanding the fact that the school trustees of Forest School District do not claim title to or right of possession in any land except the 3r., 35 p., conveyed to their predecessors in office by Munford and wife, but on the contrary disclaim any right to more of the land than was so conveyed.

The claim of appellants that they have had exclusive, notorious and hostile possession for a period of time sufficient to bar appellee from setting up a claim to any of the land outside of the rail fence, is absolutely discredited by the admissions made in the pleadings and proof in the cause. The boundaries of the school-house lot were not marked on the land further than was shown by a public road; and the fact that the colored people have for some time encroached upon the land of appellee could not ripen into a title by adverse possession. First: Because their right of possession is subordinate to and dependent upon the right of possession of the school trustees; the school trustees claiming nothing except what was conveyed to them by the deed of Munford and wife, the colored people could never obtain any greater right; Second: Because neither the building of the church, which was built partly upon appellee Owen's, property, nor the encroachment of the grave-yard thereon, began more than eight or nine years prior to the institution of this suit, a period far short of the period of limitation. Appellants claiming in their bills under the deed from Munford and wife, and under that deed alone, through the school trustees, the erection of a part of the church building on appellee's land, and the mere encroachment of a part of the grave-yard thereon, has not and never can ripen into a good title,

from the fact that it had its origin in a mistake, and not a claim of right from the beginning. The colored people who built the church thought that they were putting it entirely upon the school-house property, as conveyed to the school trustees by Munford and wife. They thought that the grave-yard was on that land, and did not for a moment think that they had a right to more land than was conveyed by that deed to the school trustees. The school trustees undertook to give them the right to occupy no land except what was conveyed by that deed. So that the fact that appellee Owen thought that the church and grave-yard were on the school-house lot, and for that reason made no objection to the erection of the church or the burial of the dead, does not estop him now from asserting his rights when he has ascertained for the first time that there has been such encroachment, and for the first time has learned exactly where the line between the school-house property and his property is located.

In the amended bill filed by appellants is an allegation which, of itself, if more than what has been stated were needed, is conclusive that the relief they seek in this litigation was properly denied, viz.: that "very soon after said land (the school-house lot) was conveyed, as aforesaid, the colored people of Forest District, near the property in the bill mentioned, organized a church or religious congregation by the name of Altha Grove Baptist Church, and said congregation, with the consent and co-operation of the trustees mentioned in said deed (i. e., the trustees of Forest School District), jointly built a house on said land for the purpose of holding religious services therein and teaching public school." In other words, by appellants' own showing, they have no title whatsoever to the land which is the subject of this controversy, but the title thereto is in the trustees of Forest School District as to the school-house lot, and outside of that they make no sort of claim to any part of the land of appellee Owen; and it is through these trustees and subordinate to their rights that the colored people of Forest

School District obtained permission to build a church on the school-house lot for the purpose of holding religious services therein and teaching a public school.

As was held in *Clarke* v. *McClure*, 10 Gratt. 305: "Where one is in under the owner of the legal title, a privity exists which precludes the idea of a hostile, tortious possession which could silently ripen into title by adverse possession under the statute of limitations."

"Where one went into possession of land with the verbal consent of the owner, his possession could not ripen into a title in the absence of a clear, positive and continued disavowal of the owner's title brought home to his knowledge." *Thompson, &c.* v. *Camper,* 106 Va. 315, 55 S. E. 674, and authorities there cited.

Again, appellants put themselves in an inconsistent position when they claim in the argument here that they are "the legal successors to the trustees mentioned in the deed from Munford and wife, while in their pleadings they admit that the successors to the school trustees named in "Exhibit A," filed with their amended bill, (deed from Munford and wife to the school trustees of Forest District) are E. N. Nelson and two others named, being the same persons who were the school trustees of Forest District at the time this suit was brought, made parties to the amended bills, and have answered as stated.

The decree appealed from is without error and will, therefore, be affirmed.

*Affirmed.*