# CHARLESTON.

SPRUCE RIVER COAL COMPANY *v.* VALCO COAL COMPANY.

Submitted November 7, 1923.  Decided November 20, 1923.

1. MINES AND MINERALS—*Measure of Damages for Mining and Removing Coal of Another Stated.*

   The true measure of damages for entering upon another's land and mining and removing coal therefrom, unless wilfully

done, is the value of the coal after it is taken from the mine or loaded on cars, less the proper expense of such severance. (p. 70).

2.  SAME—*Trespasser Removing Coal Entitled Only to Reasonable Expense for Removal.*

    In ascertaining such proper expense of removal of the coal, the trespasser is not entitled to have included therein an unreasonable amount of overhead expense of operation due to extraordinary conditions resulting from a strike prevailing at his mines, and if any such overhead expense is proper it should be limited to such reasonable amount as the jury may find was necessarily incurred under normal conditions prevailing in the same locality.    (p. 73)..

Error to Circuit Court, Boone County.

Action by the Spruce River Coal Company against the Valco Coal Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Byrne, Littlepage & Linn,* for plaintiff in error.
*Leftwich & Shaffer,* for defendant in error.

MILLER, PRESIDENT:

This is an action on the case for 1500 tons of coal alleged to have been mined and taken from plaintiff's land by the defendant willfully, and for which plaintiff claims damages to the amount of $7,500.00.

The verdict for plaintiff upon which the judgment complained of was pronounced, was for $3,353.82.

The fact of the trespass and the quantity of coal taken by defendant was not only proven by plaintiff, but was admitted by defendant. The only issues presented to the jury, therefore, were (1) whether the trespass was willful, or the result of mistake as to the boundary line between the coal area owned by plaintiff and that owned by defendant, and (2) what was the proper measure of the damages sustained. The general rules applicable in such cases, as laid down in a recent case decided here, were correctly submitted to the jury by instructions given at the request of both parties. Those rules are that, ''where the trespass is willful, the measure of damages is the value of the property at

the time and place of demand, without deduction of labor and expense; but where such trespass is not willful, but is the result of a mistake of fact, the measure of plaintiff's damages is the value of the article after the severance, less the proper expense of such severance.'' *Pittsburgh & W. Va. Gas Co.* v. *Pentress Gas Company,* 84 W. Va. 449; 100 S. E. 298.

Considering the amount of the verdict, it is manifest that the jury found that the trespass was not willful, but was due to an honest mistake, and that the defendant should account to the plaintiff on that theory. No cross-assignments of error are assigned. Wherefore, the two questions which the jury had to determine were: First, the market value of the coal when taken; and, second, the proper and reasonable cost of producing it at the tipple or on board cars.

The time of the trespass covered the months of June, July and August, 1922, and with slightly varying figures both parties agree that the actual selling price of coal from the same seam in that vicinity covering this period averaged about $5.25 per ton. The number of tons proven to have been removed from plaintiff's property was 1322 tons.

Another part of plaintiff's demand presented by the declaration and covered by the evidence was for damages to the coal remaining in plaitniff's land, resulting from the mining operations carried on therein by defendant. The evidence of the engineers who measured the mine was that some 500 tons had been thus damaged and rendered unmineable, and of the value of about 60 cents per ton in the mine, or a total value of $300.00; and the court instructed the jury that in arriving at their verdict they should include the $300.00 therein. There is no complaint of this instruction.

As there is substantial agreement as to the amount realized by the defendant from the sale of the coal mined from plaintiff's land and the damages to the coal rendered unminable by defendant's operation, the only real matter in controversy is as to what sum defendant should be credited with as the reasonable and proper cost of producing the coal at the tipple or on board cars. Defendant's contention is that

the price realized for the coal mined and sold was abnormal; and that the abnormal cost of production should be credited thereon.    According to its figures the average cost in June was $5.37, in July $3.87, in August $5.71, and in September $4.23, making an average for the four months of $4.79-½, or for the three months of June, July and August of $4,98-1/3, and that their actual profit was only 17 cents per ton.    It is admitted that these figures include all overhead charges of the defendant company, including pay roll, mine superintendent, power bill and royalty on the coal produced, based on the operation of its mine, all loaded upon the small production during the prevailing strike period, when at one time only six men were working.

The result of defendant's operation according to its figures given in evidence is, that during the month of June it mined 220 tons of coal at an expense of $5.37 per ton, which sold at $3.00 per ton, entailing a loss of $521.40; in July 664 tons, at a cost of $3.87 per ton, which sold at $3.90 per ton, leaving a profit of $79.92; in August 1193 tons, at a cost of $5.71 per ton, which sold at $6.44 per ton, profit $870.89; in September 1178 tons, at a cost of $4.23 per ton, which sold at $5.49 per ton, profit $1,484.28; making a total profit of $1,853.69 on the 3255 tons mined, about 57 cents per ton. On the other hand the testimony of the plaintiff shows that the cost of producing coal at their Spruce River mines, in the same seam, during the same period, was $1.00 to $1.10; that the cost leaving off the overhead, royalty, taxes and superintendancy, was about $1.30 per ton; and that total cost, including everything, was about $2.50 per ton.    Just how the jury arrived at the exact amount of their verdict from the figures given in evidence is not clear.    As counsel for plaintiff analyze the verdict, they conclude that the jury took as the actual cost of production $2.40 per ton, and as the average selling price $4.71, leaving $2.31 per ton profit, which plaintiff was entitled to receive for each of the 1322 tons taken, amounting to $3,053.82; to which they added the $300.00 damages for the 500 tons left in the mine and rendered unminable, making in all $3,353.82, the exact amount of the verdict. .

The point stressed by defendant's counsel in this connection is that plaintiff's figures were based on general costs over an extended territory, and were not, as they should have been, limited to the actual cost to defendant, dependent on local conditions at the mines from which the coal was taken, evidently referring to the small production due to strike conditions and the large overhead expense which defendant proposed to load on its small production of coal.    We think it would be going too far to adopt the extreme views of defendant's counsel.  It is doubtful whether defendant should be credited with any overhead expense.  The rule of the Pentress case is the value of the coal after its severance, less the proper expense of severance.  It certainly would not be proper, in ascertaining damages for the coal taken, to credit the trespasser with the large overhead expense claimed in this case.  But we need not decide this question, for evidently the jury in their verdict allowed a considerable sum for overhead expenses.    Defendant's counsel did not in their figures analyze the expense account and show what was for actual labor and what was overhead expenses; nor does this appear from defendant's evidence.  On the other hand, plaintiff did give figures showing actual labor cost and the overhead expenses at its mines in the same vicinity, putting the cost of mining exclusive of overhead at $1.40 per ton.

Taking the actual figures given by defendant as the average selling price of the coal mined by it during the time of its trespass on plaintiff's property, $5.34 per ton, and the figures given by plaintiff as the proper cost of production, $2.50, the jury might have found a verdict, based on the testimony in this case, of $3,754.48 for the 1322 tons of coal taken, and $300.00 for the 500 tons rendered unminable, in all $4,054.48.

We can not see that any rights of the defendant have been invaded or denied it by the verdict and judgment complained of; and our opinion is to affirm the judgment.

*Affirmed.*