OTIS R. THAXTON *and* FRANCES R. THAXTON

*v.*

ALLEN BEARD, BIG B DRILLING COMPANY,

INCORPORATED, *etc., and* HARRY L. PAXTON

(No. 13285)

Submitted May 15, 1973.     Decided December 21, 1973.

*George W. Stokes, H. D. Rollins and J. E. Litz* for appellants.

*Cunningham & Burgess, Bennett R. Burgess* for Harry L. Paxton.

*Stone, Bowles, Kauffelt & McDavid, Paul N. Bowles and Roger W. Tompkins, II,* for Allen Beard, and others.

BERRY, CHIEF JUSTICE:

The appellants, Otis R. Thaxton and Frances R. Thaxton, appeal from a final order of the Circuit Court of Kanawha County entered on October 11, 1972, wherein the court rejected the appellants' claim that they were entitled to a full royalty on their interest in a gas well drilled on their land in which they owned a 1/8th interest in the oil and gas. The court held that the appellants were only entitled to a royalty of 1/8th of 1/8th of 50.5/250 of the production of the well; the 50.5/250 being the ratio of the appellants' land to a larger tract included in a unitization agreement entered into by the owners of the other 7/8ths interest in the oil and gas on the 50.5 acres and the owners of the oil and gas in the surrounding land comprising the other 199.5 acres. This Court granted the appeal on December 4, 1972 and the case was submitted for decision on May 15, 1973 upon the arguments and briefs on behalf of the respective parties.

The appellants and one of the appellees, Harry L. Paxton, contended before the trial judge that they were the owners of record of the 1/8th interest in question in the oil and gas under the 50.5 acres. The parties stipulated as to certain facts concerning the title to the 1/8th interest. On August 31, 1921 F. W. Chandler and wife conveyed 60 acres of the original 63 acre tract to Robert Cavender reserving a 1/2 interest in the oil and gas. On December 13, 1921 Robert Cavender and wife conveyed 9 1/2 acres of the 60 acres to J. W. Bailey. On March 14, 1924 Robert Cavender and wife conveyed the remaining 50.5 acres and 1/2 oil and gas to D. S. Bailey. In 1937 D. S. Bailey and wife conveyed a 1/4th interest in

the oil and gas to Columbian Carbon Company and a 1/8th interest to Loren W. O'Dell and Olive Culpepper. On March 5, 1943 D. S. Bailey and wife conveyed the 50.5 acres to E. C. Berry and on August 10, 1943 E. C. Berry conveyed the tract to the appellants. Thus, at this point in time the appellants owned the 50.5 acres and a 1/8th interest in the oil and gas; F. W. Chandler owned a 1/2 interest in the oil and gas; Columbian Carbon Company owned a 1/4th interest in the oil and gas; and Loren W. O'Dell and Olive Culpepper owned a 1/8th interest in the oil and gas.

In 1944 and 1945 the land books show that the appellants were assessed on the 50.5 acres "less oil and gas". However, in 1946, the land books assessed the appellants' interest as 50.5 acres "less 7/8 oil and gas". But in 1947 the land books indicate that their 1/8th interest in the oil and gas was sold to the state in 1945. From 1948 to 1969, the land books show the appellants were assessed for the 50.5 acres "less oil and gas". On November 10, 1970 the appellants paid the back taxes on their oil and gas interest from 1936 to 1970.

In 1944 and 1945 the land books incorrectly show an entry for "D. S. Bailey and J. W. Bailey 63A, 1/4 oil and gas int. Tups. Ck.". In fact, J. W. Bailey owned a 1/2 oil and gas interest in 9 1/2 acres which had originally been included in the 63 acres. D. S. Bailey no longer had any interest in any of the 63 acres.

In May, 1950 Harry L. Paxton received a deed from the Deputy Commissioner of Forfeited and Delinquent Lands for Kanawha County which conveyed 1/4th of the oil and gas underlying the 9 1/2 acre tract which had been conveyed to J. W. Bailey in 1921 by Robert Cavender and his wife and 1/4th of the oil and gas underlying the 50.5 acres "being the same real estate sold to the State of West Virginia in the year 1946 for the non-payment of taxes in the year 1945 in the name of D. S. Bailey and J. W. Bailey". As a result of this conveyance, the appellee Paxton contends that he lawfully and properly purchased

the disputed 1/8th interest in the 50.5 acres from the state and that the appellants do not own the 1/8th interest under which they are claiming.

On January 13, 1967 Harry L. Paxton leased a number of tracts of land to Allen Beard, one of the appellees, who was an oil and gas operator. The lease purported to convey 8/8ths of the oil and gas on the 50.5 acres. In October or November of 1967 the Big B Drilling Company entered upon the appellants' land and began drilling. The Big B Drilling Company was wholly owned and operated by Allen Beard. On April 10, 1968 the "Declaration of Unitization and Consolidation for a Drilling Unit", which was specifically provided for in the lease, was properly recorded. The appellants admit they knew the well was being drilled on their property in 1967, but Otis Thaxton, not having paid the taxes on the 1/8th oil and gas interest, thought that Harry Paxton, an appellee, owned all of the oil and gas on the property. Moreover, Cooper Shields, who was employed by Allen Beard, visited Otis Thaxton in early 1967 and asked about leasing his land but Thaxton replied he didn't own the oil and gas rights. Otis Thaxton also admitted in his deposition that he knew the well was producing but he did not take any action until 1970 when he paid the back taxes on his 1/8th interest and then brought an action in the Circuit Court of Kanawha County to recover royalties on the gas produced.

The case was submitted to a special judge, the circuit court judge having been disqualified, and the special judge held that the 1/8th interest of the appellants was not assessed in 1945 or from 1947 to 1969, and, therefore, title to that interest forfeited to the state. However, the court also held that the 1945 assessment "Bailey, D. S. & J. W. 63A. 1/4 oil and gas int. Tups. Ck." was invalid because this single entry combined two separate tracts of land owned by two different people. Moreover, D. S. Bailey no longer had any interest whatsoever in the 63 acre tract. The appellee Paxton claims he acquired the

1/8th interest in the 50.5 acres when he received the deed from the Deputy Commissioner of Forfeited and Delinquent Lands after the assessment in the names of D. S. Bailey and J. W. Bailey in 1945 was not paid and was forfeited to the state. However, as previously noted, neither J. W. Bailey nor D. S. Bailey owned the 1/8th interest in the oil and gas in the 50.5 acre tract of land.

Thus, the court held the appellants had the right to redeem the 1/8th interest in the oil and gas which they did in 1970, but the court further held that the appellants were estopped from denying the validity of the lease of Paxton with Beard and the unitization agreement involving the 250 acres. The court held that the appellants were to be paid royalties as if they had signed the lease, which was subject to the unitization agreement, and as a result were entitled to 1/8th of 1/8th of 50.5/250 of the production of the well. The well had produced about $127,000 worth of gas at a cost of about $137,000.

The appellants contend that since they did not sign the lease or the unitization agreement, they were entitled to the full royalty of their interest in the oil and gas in the 50.5 acre tract on which the gas well in question was drilled. Thus, they contend they are entitled to 1/8th of 1/8th of the production of the well.

Allen Beard filed an answer alleging that the appellants were estopped from asserting any claim against him, and he also filed a cross-claim against the appellee, Harry L. Paxton, based on a provision of his lease with Paxton.

A considerable portion of the briefs of the parties deals with the title to the 1/8th interest in the oil and gas under the 50.5 acre tract of land involved in this case. This question was properly disposed of by the trial court when it found and entered judgment that the appellants were owners of the tract of land involved here containing 50.5 acres less 7/8th of the oil and gas therein. The deed from the Deputy Commissioner of Forfeited and Delinquent Lands to the appellee Harry L. Paxton was based on a void assessment. The assessment combined two

separate tracts of land owned by two different people, D. S. Bailey and J. W. Bailey, and neither owned the 1/8th oil and gas interest in the 50.5 acre tract of land. There must be a valid assessment in order to support a deed from the Deputy Commissioner of Forfeited and Delinquent Lands as the result of delinquent land sales. *Male v. Moore,* 70 W.Va. 448, 74 S.E. 685; *Collins v. Reger,* 62 W.Va. 195, 57 S.E. 743.

It appears that there was no appeal from the judgment of the trial court that the appellants had title to the 1/8th interest in the oil and gas in the 50.5 acre tract of land. The appellee Beard drilled the well in question under the authority of a lease given to him by the appellee Paxton in which Paxton guaranteed his title to the oil and gas interest in question. The trial court entered judgment " * * * against Harry L. Paxton in favor of Allen Beard for any and all sums which he may be required to pay to the plaintiffs, Otis R. Thaxton and Frances R. Thaxton * * * ." There was no appeal from this judgment and the judgment is final in this respect against Paxton and in favor of Beard. See *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 and *Pruitt v. Fetty,* 148 W.Va. 275, 134 S.E.2d 713.

The appellants contend that the trial court erred in refusing to award the appellants a royalty of 1/8th of 1/8th of the production of the well drilled on the 50.5 acre tract of land owned by them without any deduction for cost of drilling and producing the gas and in holding that the appellants were only entitled to recover from the appellees a royalty under the unitization agreement which amounted to 1/8th of 1/8th of 50.5/250 of the total production of the well.

The trial court based its decision on estoppel. There is no question that Paxton believed he owned the 1/8th interest in the oil and gas under the 50.5 acre tract of land because he thought he had purchased the interest at a tax sale and obtained a tax deed for the interest and that he, in good faith, leased this interest to Beard. It is apparent

that the appellant Otis Thaxton did not believe he owned the 1/8th interest in 1967 when Beard's agent questioned him about the title to the 1/8th interest, because he had not been paying the taxes on the 1/8th interest. When Beard's agent, Shield, saw Otis Thaxton at his drug store on West Washington Street in Charleston, Thaxton did not tell him he owned any oil and gas interest in the tract in question when asked about the matter. Beard went onto the 50.5 acre tract under the provisions of the unitization agreement in good faith and drilled this well under the agreement as was required in the industry for such drilling, without any objection whatsoever from the appellants. After the well was drilled and it was ascertained it was a producing well the appellant Otis Thaxton redeemed the 1/8th interest by paying the back taxes for the period 1936 to 1970, and then instituted this action in the Circuit Court of Kanawha County to compel the appellees to pay him the full royalty on the 1/8th interest, thus ignoring the provisions of the unitization agreement.

Where a party stands by and sees another who, in good faith, deals with property inconsistent with the first person's interest and that person makes no objection, he is estopped to deny the validity of the action on the part of the second person. *Haner v. MacCorkle,* 109 W.Va. 762, 158 S.E. 500; *United Fuel Gas Company v. Cabot,* 96 W.Va. 387, 122 S.E. 922; *Despard v. Despard,* 53 W.Va. 443, 44 S.E. 448; 28 AM. JUR. 2d, *Estoppel and Waiver,* § 112. However, it has been held that this rule does not apply against one who is actually ignorant of his own rights in the property. *Greenwalt v. McCardell,* 178 Md. 132, 12 A.2d 522; *Davis v. Owen,* 107 Va. 283, 58 S.E. 581. See *United Fuel Gas Co. v. Hays Oil & Gas Co.,* 107 W.Va. 255, 148 S.E. 76.

The appellants cite the case of *South Penn Oil Co. v. Haught,* 71 W.Va. 720, 78 S.E. 759, to support their contention that they are entitled to the full royalty on the 1/8th interest. However, in that case the owner of an

interest in the minerals objected to the extraction of the minerals by another co-tenant. In the case at bar there was never any objection by the appellants to the drilling of the well in question and the production of gas therefrom. Three years after the well was drilled and was producing gas the appellants contend they should be paid a full 1/8th of 1/8th royalty.

It was also contended by the appellants that the doctrine of estoppel is not applicable. It should be noted that the land books showed that the state had title to the 1/8th interest in the oil and gas on the 50.5 acre tract of land in question when the well was drilled. The land books showed that the appellants' interest in the oil and gas was sold to the state in 1945 and it was so indicated on the land books in 1947 through 1952 and in 1953 the land books show that the appellants only owned "50 1/2A.Tup. Crk. less oil and gas".

The appellants, under the facts in the case presented here, cannot have their full 1/8th of 1/8th royalty interest. The appellants have the option of either recognizing the lease and receiving their proportional share under the terms of the lease and unitization agreement or of rejecting the lease and receiving 1/8th of the oil produced less 1/8th of the cost of discovery and production.

Thus, if the appellants reject the terms of the lease and unitization agreement they would not be entitled to recover anything under the facts of this case and the law applicable thereto. This reasoning is based on the principle recognized by this Court in many similar cases that the measure of damages to an owner of an oil and gas interest against an innocent trespasser who has removed the oil and gas from under the land is only the value of such oil and gas produced less the cost of the production thereof. *Condry v. Pope*, 152 W.Va. 714, 166 S.E.2d 167; *Pan Coal Co. v. Garland Pocahontas Coal Co.*, 97 W.Va. 368, 125 S.E. 226; *Spruce River Coal Co. v. Valco Coal Co.*, 95 W.Va. 69, 120 S.E. 302; *Williamson v. Jones*, 43 W.Va.

562, 27 S.E. 411. It is stipulated in the record that the cost of production exceeded the value of the gas produced at the time the case was tried but apparently the well is still producing.

It is interesting to note that the appellants recognize this principle in their complaint, wherein it was stated: "The plaintiffs are entitled to an accounting of one-eighth (1/8) of the value of the substances produced from said well, less the cost of production thereof; and the defendants have refused and still refuse to recognize the plaintiffs as the lawful owners of the one-eighth (1/8) oil and gas minerals and to compensate them for the removal of their gas therefrom." This statement was contained in the prayer in the original complaint but was omitted from the prayer in the amended and supplemental complaint and thus raised this issue in the case.

The case at bar involves one co-tenant or tenant in common against another and strictly speaking a co-tenant cannot be a trespasser against his co-tenant. *Williamson v. Jones, supra.* The same rules apply in cases where the tenant in common leases the property to a third person; as stated above, the nonconsenting co-tenant may recognize the lease and receive his fractional interest in the royalty or reject the lease and receive his fractional part of the oil or gas produced, less his proportionate part of the cost of discovery and production. *Texas & Pacific Coal & Oil Co. v. Kirtley,* Tex. Civ. App., 288 S.W. 619.

It was held in *Smith v. United Fuel Gas Co.,* 113 W.Va. 178, 166 S.E. 533, that the owners of an undivided interest in land, who had committed waste, through their agents and lessees, by taking gas without the consent of their cotenants, were required to account for their proportionate share in the royalties received. The royalties received by Paxton, the co-tenant in the instant case, for the 1/8th interest of the co-tenant, Thaxton, was 1/8th of 1/8th of 50.5/250.

It was held in the case of *Prewett v. Van Pelt,* 118 Kan. 571, 235 P. 1059, that one of two persons owning an oil and gas lease who drills a well, claiming in good faith to be the sole owner of the premises, and markets the gas produced, cannot be charged as being a trespasser and is liable only to account for the reasonable market value of the gas taken, less the cost of the installation of the well.

In dealing with this matter this Court held in Point 1 of the syllabus of the case of *McNeely v. South Penn Oil Co.,* 58 W.Va. 438, 52 S.E. 480, as follows: "The basis of accounting, between tenants in common, joint tenants and coparceners, for waste, effected by the extraction of petroleum oil from the common property, under circumstances which make it reasonably certain that the party, so taking oil, acted without fraud and under the belief of good title in himself to the whole of the property, though not without notice of defect of title, is the value of all the oil produced from the land, less the whole cost of its production, including the cost of drilling producing wells."

Inasmuch as it appears that the doctrine of estoppel in pais is not applicable under the facts and circumstances of this case, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded with directions for disposition in accordance with the principles stated herein.

*Judgment reversed; remanded with directions.*