387 S.E.2d 99

**EAGLE GAS CO.**

v.

**DORAN & ASSOCIATES, INC.**

No. 18744.

Supreme Court of Appeals of
West Virginia.

Oct. 19, 1989.

James A. Russell, Steptoe & Johnson, Clarksburg, for Doran & Associates, Inc.

John Lewis Marks, Jr., McNeer, Highland & McMunn, Clarksburg, for Eagle Gas Co.

NEELY, Justice:

In 1962, Eagle Gas Company, the plaintiff below, entered into an oil and gas lease with the owners of the oil and gas on a 140 acre tract in Harrison County. The 1962 Lease was granted for a term of ten years from 6 April 1962 and as long thereafter as the lessee either searched for or produced oil or gas. No wells were drilled on the 140 acres within the ten-year primary term of the 1962 Lease; consequently, it expired by its own terms in the Spring of 1972.

In the Fall of 1972, Eagle Gas sought to renew the 1962 Lease. A new lease instrument ("the 1972 Lease") was signed by Eagle's President on 24 October 1972 and was mailed to the two owners of the oil and gas rights, one of whom lived in Ohio and the other in Virginia. Although the 1972 Lease was executed by the owners, it was not returned to Eagle Gas after it was signed. Indeed, the record is silent concerning what happened to the 1972 Lease until it was found in November, 1980 among the effects of one of the owners who had died four years before.

The 1972 Lease provided for quarterly delay rental payments at the rate of $25 per quarter—exactly the same delay rentals payable under the 1962 Lease. Delay rental checks were sent to "David S. Lowe, Agent" at a McConnelsville, Ohio address through and including July of 1978, even though David Lowe died in 1974, and even though Eagle Gas learned in December, 1976 that David Lowe was dead. Upon learning of David Lowe's death, Eagle Gas did not secure a new agency agreement from the cotenants of the oil and gas, but in 1978 began sending quarterly rental checks to Huntington National Bank, Trustee.

The record is unclear whether Robert Lowe, the other lessor, received any delay rentals under the 1972 Lease. His widow "never saw" delay rental payments from the time she signed the 1972 Lease until Mr. Lowe died in July of 1976. After checks started going to the Huntington National Bank, Robert Lowe's successor received no portion of the delay rentals until after this action was begun. Nonetheless, rental checks tendered between David Lowe's death in 1974 and Robert Lowe's death in 1976 were endorsed by Robert Lowe.

Doran & Associates, Inc., the defendant below, is an oil and gas production company which, at the times relevant to this action, was active in the development of oil and gas properties in Harrison County and elsewhere. Before 1980, Doran had developed a production area of Harrison County known as the "McDonald field." In early 1980, Doran wanted to "step-out," or expand, the McDonald field. Among the properties that Appellant identified for potential development was the 140–acre tract of land covered by the unrecorded 1972 Lease to Eagle.

Doran's lease broker prepared a preliminary abstract of title and determined that the oil and gas was owned by two trusts. Huntington National Bank of Columbus, Ohio was Trustee of one of the trusts; Marjorie Lowe of Sedona, Arizona was Trustee of the other trust. Each trust owned an undivided one-half interest in the oil and gas. Additionally, Doran's lease broker had a Harrison County lawyer prepare a written title report on the 140–acre tract. Both the lease broker's work product and the attorney's title report indicated that the property was not under lease at the time.

After obtaining these two sources of information concerning the ownership of the oil and gas underlying the 140–acre tract

and its availability for leasing, Doran's lease broker contacted one of the owners of the oil and gas—Huntington National Bank, Trustee—in the Spring of 1980. After approximately three months of intermittent negotiations, the Bank executed a lease of its undivided one-half interest on 19 June 1980. This lease was recorded in the Harrison County Clerk's office on 3 July 1980.

The trust administered by the Huntington National Bank had been created by David Lowe, one of the two cotenants who executed the original 1962 Lease to Eagle. Included among the assets of the trust were fractional interests in four oil and gas properties in the Clay District of Harrison County, including an undivided one-half interest in the 140 acres. During the lease negotiations between Doran and the Bank, the Bank's Trust Real Estate Officer informed Doran's Vice President that the David Lowe Trust has been receiving payments from Eagle. The Bank personnel did not know why these payments were being made; however, Doran's lease broker assisted the Bank personnel in determining that the payments probably were rental payments on one of the David Lowe Trust properties. The Bank had no record of any oil and gas lease on any of the trust properties; so, on 15 April 1980, the Bank's Trust Real Estate Officer called Eagle to determine whether Eagle had a current lease.

Eagle's employee informed the Bank's Real Estate Trust Officer that Eagle *did not* have a lease of the 140–acre tract involved in this action. Consequently, the Bank's Real Estate Trust Officer concluded that she had the authority to execute an oil and gas lease in favor of Doran. Ultimately, these facts will be the cynosure of our holding in this case. Although, as we shall soon see, the other one-half interest in the oil and gas acquired by Doran was acquired under conditions that would have placed a reasonable person on notice that there was a cloud on the title, the first one-half interest was acquired by Doran as a *bona fide* purchaser for value without notice of any defect.

After procuring the half interest lease from the Huntington National Bank, Doran obtained another title opinion report on the 140–acre tract. In that report, Doran's title attorney advised Doran that the title examination had revealed "various prior leases" of the 140–acre tract and that one of those prior leases was a 1962 Lease in favor of Eagle that had been granted for a term of ten years from 10 April 1962 "and as long thereafter as said land is operated in the search for or production of oil and gas." Appellant was advised by counsel to conduct an examination on the ground to determine if any activities were being pursued under any of these prior leases. An examination was made by Doran, but no activities were discovered.

Notwithstanding the existence of two attorneys' title opinion reports, the absence of any visible oil and gas operations on the ground, and second-hand information from Eagle itself that Eagle did not have a current lease on the 140–acre tract, Doran's Vice President concluded that, before procuring a lease on the other one-half interest, it would be prudent to have direct contact with Eagle to assure himself that Eagle did not have a lease. Consequently, Doran's Vice President, James Taylor, accompanied by Doran's lease broker, went to Eagle's office and met with Eagle's corporate secretary, Rw. Howard. Mr. Taylor told Mr. Howard that Doran had a half-interest lease on the 140 acres and showed Mr. Howard where the property was located on a map. Mr. Taylor then asked Mr. Howard if Eagle had a lease on that tract.

Mr. Howard sent an assistant to check Appellee's records, who left the room and then came back and beckoned Mr. Howard out of the room also. After several minutes, Mr. Howard returned and said "we have a lease on the property." Mr. Taylor's initial reaction to Mr. Howard's assertion was that of disbelief. Mr. Taylor then asked for a copy of the lease, to which Mr. Howard responded: "It's not our policy to give out copies." Mr. Taylor then went to the Harrison County Courthouse personally to check the records concerning the existence of a recorded current lease in favor of Eagle. The effort confirmed his informa-

tion that there was no lease on record still in its primary term other than Doran's half-interest from the Bank.

Having concluded that Eagle did not have a valid lease on the 140 acres, Mr. Taylor then went to Arizona to procure a lease on the other undivided one-half interest. Legal title to this interest was vested in Marjorie Lowe, Trustee, the widow of the former owner of this interest, Robert F. Lowe. While Mr. Taylor was at Mrs. Lowe's house in Sedona, Arizona, Mrs. Lowe produced for Mr. Taylor the original and one copy of the 1972 Lease in favor of Eagle that had been executed by David Lowe and Robert Lowe and their spouses in November and December, respectively, of 1972, but that had never been returned to Eagle. These lease documents had been in a box of papers that were among the effects of Robert Lowe, who had died more than four years earlier. Mr. Taylor determined that Mr. Lowe had not received any delay rentals from Eagle. A lease was then executed in favor of Doran by Mrs. Lowe on 19 November 1980 and was recorded in the Harrison County Clerk's office on 26 November 1980.

In March, 1981, Doran applied to the West Virginia Department of Mines, Oil and Gas Division for permits to drill four wells on the 140 acres. Permits were granted for all four applications. Drilling of the first well, the D. Lowe # 1, began on 9 June 1981, after which the producing formation was stimulated and the well was completed. Drilling on the D. Lowe # 4 well began on 25 June 1981 and continued through 2 July 1981. (The other two wells were not drilled because of this lawsuit). The cost to Doran of drilling, testing, equipping and completing the two wells was $286,182.09. A total of 154.2 barrels of oil (but no gas) was produced from the two wells. While Doran's two wells were being drilled in June, 1981, an employee of Eagle called Marjorie Lowe, Doran's lessor, in Arizona and informed Mrs. Lowe that Eagle was "going to court." During that conversation, Mrs. Lowe suggested that she had in her possession the 1972 Lease. The employee of Eagle asked that Mrs. Lowe send him the lease, which she did.

The 1972 Lease in favor of Eagle was recorded in the Harrison County Clerk's office on 30 June 1981. This lawsuit was begun shortly thereafter.

In the trial court, Eagle sought to enjoin Doran & Associates, Inc., from exercising any rights under their oil and gas leases and sought compensatory and punitive damages. The Circuit Court of Harrison County heard this case without a jury and found in favor of the plaintiff, Eagle Gas Co., Inc. and against Doran & Associates, Inc. The court determined that Doran had no rights under the two lease agreements discussed above, and ordered that Doran be enjoined from exercising any of the rights granted to it under the lease agreements. It then awarded Eagle $4,661.43 as the value of the oil and gas produced from the subject property and gave Eagle $5,000 in punitive damages as the result of the defendants' willful, bad faith trespass. Doran appealed here; we reverse in part and affirm in part.

I.

Our review of the record indicates that the circuit court's finding of fact No. 4 is incorrect. Finding of fact No. 4 said:

"Prior to Doran & Associates, Inc., obtaining its lease from the Huntington National Bank, Doran & Associates, Inc., was placed on inquiry notice of the 1972 Lease of Eagle Gas Company and was charged with such knowledge which the strictest inquiry would have put in its possession."

We disagree. In general a party without *actual* notice may rely upon record titles in the office of the clerk of the county commission of the county in which the land is located. W.Va.Code, 40-1-9 [1963]. Nonetheless, when a prospective buyer has reasonable grounds to believe that property may have been conveyed in an instrument not of record, he is obliged to use reasonable diligence to determine whether such previous conveyance exists. *Bailey v. Banther*, 173 W.Va. 220, 314 S.E.2d 176 (1983); *United Fuel Gas Co. v. Morley Oil & Gas Co.*, 101 W.Va. 83, 131 S.E. 716

(1926); *Lenhart v. Zents,* 50 W.Va. 86, 40 S.E. 444 (1901). In the case before us, Doran searched the title, found no valid lease, asked the trustee if it knew of a valid preexisting lease, and then called the plaintiff, Eagle, which responded that Eagle had no lease. At that point Doran became a *bona fide* purchaser for value without notice as to the first undivided one-half interest.

 With regard to the second lease, however, Doran did, indeed, know that Eagle had a lease, but its non-delivery made that lease's legal validity at least questionable. However, notwithstanding that the lease agreement was never properly delivered to Eagle, the delay rental payments were promptly issued and promptly accepted by the agent of the lessors. In these circumstances the law provides that a valid lease exists. *See e.g., Hager v. Exxon Corp.,* 161 W.Va. 278, 241 S.E.2d 920 (1978); *Thaxton v. Beard,* 157 W.Va. 381, 201 S.E.2d 298 (1973); *Fredeking v. Grimmett,* 140 W.Va. 745, 86 S.E.2d 554 (1955); *Blair v. Dickinson,* 133 W.Va. 38, 54 S.E.2d 828 (1949).

Therefore, with regard to one-half of the oil and gas, Doran was the legitimate lessee and by no stretch of the imagination a trespasser. However, with regard to the other undivided one-half interest in the oil and gas, Doran is chargeable with notice of the prior lease. Therefore, after the dust settled, Doran and Eagle each held an undivided one-half interest in a leasehold of the oil and gas. Both Doran and Eagle were tenants-in-common of the property, each with the right to possession of the whole.

 It is conceptually impossible for tenants-in-common, with a mutual right to possession of the whole, to trespass against one another. *Thaxton v. Beard,* 157 W.Va. 381, 201 S.E.2d 298 (1973). But an action for an accounting will lie on such facts. *W. Va. Code,* 55–8–13 [1923].

## II.

The question now is what to do. Eagle and Doran should share the wells because the wells have already been drilled; this action was begun after the wells were completed. Doran should be entitled to recapture from the proceeds of the well, and as first call on the revenues generated, one-half of the cost of drilling the wells, but without interest. Eagle is entitled to one-half of the $4,661.43 that the court found were the proceeds from the sale of the oil and gas, which amount must be credited toward Eagle's fair share of the cost of drilling the wells. *See Thaxton v. Beard,* 157 W.Va. 381, 201 S.E.2d 298 (1973).

We find no justification in this case for the award of punitive damages. *See e.g., Pan Coal Co. v. Garland Pocahontas Coal Co.,* 97 W.Va. 368, 125 S.E. 226 (1924); *Jopling v. Bluefield Water Works & Improvements Co.,* 70 W.Va. 670, 74 S.E. 943 (1911). This is properly an action for an accounting, not a tort claim. The misunderstanding was as much the fault of Eagle as of Doran. In the first instance, Eagle responded to the inquiry of the Huntington National Bank by saying that Eagle did not have a lease on the 140–acre tract. Later, when approached by Doran directly, Eagle affirmed that it had an existing lease, but declined to give Doran a copy of the lease. Had Eagle indicated in a forthright manner that they had never received an executed copy of the lease, but that they had been paying delay rentals and that the executed lease was probably mislaid, Doran might have behaved differently.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Harrison County is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and remanded.

McHUGH, J., deeming himself disqualified, did not participate in the decision of this case.