678 S.E.2d 301

**Rickey DRAKE, Plaintiffs Below, Appellant**

v.

**WACO OIL & GAS COMPANY, INC., Defendants Below, Appellee.**

No. 34224.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 2009.

Decided Feb. 27, 2009.

Larry O. Ford, Esq., Charleston, for Appellant.

Gregory H. Schillace, Esq., Clarksburg, for Appellee.

KETCHUM, Justice:[1]

In this case, we address a certified question from the Circuit Court of Braxton County.

After reviewing the briefs, the record designated for appellate consideration, legal authorities, and the oral arguments of counsel, we find that the certified question must be reformulated so that this Court may narrowly address the law which is involved in the circuit court's question. As more fully explained below, we find that where there are two co-tenants (A and B), and both co-tenants mistakenly believe that tenant A is the sole owner of the property; and an oil and gas producer seeks to lease the mineral rights of the property from tenant A, because the oil and gas producer is also under the mistaken belief that tenant A is the sole owner of the property; and tenant B negotiates with the oil and gas producer on tenant A's behalf and actively participates in the making of the lease agreement, and tenant B discovers after the lease agreement is executed that he owns one-half of the property and subsequently sues the oil and gas producer seeking the value of the gas taken less the cost of production, tenant B is only entitled to the portion of the royalty to which he would have been entitled had both tenants A and B executed the lease.

## I.

### *Facts & Background*

Plaintiff Rickey Drake and his sister Karen S. Drake are the owners of a tract of land located in Braxton County by virtue of a deed dated August 2, 1994. Rickey Drake and Karen Drake had for some time been involved in the purchase and sale of various interests in real estate. At the time this

---

1. Pursuant to administrative orders entered September 11, 2008 and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

particular property was acquired in 1994, Rickey Drake and Karen Drake intended for the property to be titled in Karen's name alone. The preparer of the deed erred and included Rickey Drake as a grantee on the deed as well. Neither Rickey Drake, nor Karen Drake, were aware of this mistake at the time the deed was recorded, and both believed Karen to be the sole owner of the property.

Defendant Waco Oil & Gas Company, Inc., ("Waco") entered into a lease with Karen Drake on January 25, 2002, in which Waco leased the oil and gas rights under 100 acres of the property. At this time, both Rickey Drake and Karen Drake continued to be unaware of their joint ownership interest in the property and believed Karen to be the sole owner. Rickey Drake negotiated with Waco, on behalf of his sister Karen, as the parties were formulating this lease agreement.[2] After the execution of the lease, Waco had an examination of title conducted by a Clarksburg attorney who certified, on April 24, 2002, that Karen Drake was the sole owner of the minerals under the leased property.

Waco began drilling a well on the property on October 28, 2002. This well, identified as the "Drake No. 1," was completed on November 11, 2002. The well produced its first natural gas on December 4, 2002.

After the well was placed into production, Waco assigned 50 acres of the lease and the well to Lynn Energy. Another oil and gas producer, Excel Energy, was interested in subleasing the remaining 50 acres of mineral rights from Waco. Excel Energy then performed its own title examination and discovered that Rickey Drake and Karen Drake each owned a one-half interest in the mineral rights of the property. After this fact was discovered, Lynn Energy approached Rickey Drake and offered him a specified payment to release his interest in the well. Rickey

Drake refused this offer and Lynn Energy subsequently transferred its lease back to Waco.

Karen Drake had been receiving royalty payments equal to one-eighth of the value of the gas produced from the well from Waco until it was discovered that Rickey Drake owned one-half of the mineral rights. After Lynn Energy transferred the lease back to Waco, Waco split the one-eighth royalty between the Drakes. Thereafter, Karen Drake and Rickey Drake were each issued royalty payments in the amount of one-sixteenth of the value of the gas produced. Rickey Drake has not negotiated any of these royalty checks because he has refused to accept Waco's interpretation of the lease.

On February 6, 2007, Rickey Drake filed a complaint alleging innocent trespass and demanding an accounting from Waco. On September 26, 2007, Rickey Drake filed an amended complaint, removing the innocent trespass claim and instead alleging that he has been wrongfully denied the full value of the oil and gas Waco removed from the property without his authority.

On January 30, 2008, the Circuit Court of Braxton County certified the following question to this Court:

Where an oil and gas producer entered a lease for oil and gas production with one of two co-tenants, unaware of the ownership interest of the non-leasing co-tenant, produces gas pursuant to the lease and is then called upon by the non-leasing co-tenant to account, in determining the amount to which the non-leasing co-tenant is entitled is the correct measure the value of gas produced less reasonable costs of production or is the correct measure that portion of the royalty to which the non-leasing tenant would have been entitled had each tenant executed the lease?

**2.** At oral argument in this matter, counsel for Rickey Drake stated that while evidence of Rickey's active participation in the negotiations with Waco is not in the record, Rickey was not disputing this point. Mr. Drake's "Reply Brief on Behalf of Rickey Drake" states at page 2: "While the appellant does not deny that he was involved in the negotiations concerning the lease, such

involvement is irrelevant to a determination of the issue raised in this action."

We are troubled by the certified question because there is no evidentiary record from the trial court. However, the facts proffered in the appellant's brief were considered due to counsel's statements at oral argument.

The circuit court's answer to this question was that the correct measure of reparation is the portion of the royalties to which Rickey Drake would have been entitled had he joined his sister in executing the lease with Waco.

## II.

### Standard of Review

■ This Court reviews a circuit court's answer to a certified question *de novo*. Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### Discussion

■ This Court may reformulate a certified question in order to fully address the law which is involved in the question.[3] In this case, it is necessary to reformulate the certified question to answer precisely the issue of law raised. The reformulated certified question we address is:

Where there are two co-tenants (A and B), and both co-tenants mistakenly believe that tenant A is the sole owner of the property; and an oil and gas producer seeks to lease the mineral rights of the property from tenant A because the oil and gas producer is also under the mistaken belief that tenant A is the sole owner of the property; and tenant B negotiates with the oil and gas producer on tenant A's behalf and actively participates in the making of the lease agreement, and tenant B discovers after the lease agreement is executed that he owns one-half of the property and subsequently sues the oil and gas producer, is the correct measure the value of gas produced less reasonable costs of production or is the correct measure that portion of the royalty to which the non-leasing tenant (tenant B) would have been

entitled had each tenant (A and B) executed the lease?

Rickey Drake assigns error to the circuit court's conclusion that the correct measure of reparation is the amount of royalty due pursuant to the lease. Mr. Drake argues that he is entitled to receive from Waco the value of the gas produced less the reasonable cost of production. Waco's position is that Rickey Drake is entitled to that portion of the royalty he would have received had the parties not been ignorant of his ownership interest at the time the lease agreement was formed.

■ In support of his argument that he is entitled to the value of the gas less the reasonable cost of production, Mr. Drake cites Syllabus Point 4 of *Thaxton v. Beard*, 157 W.Va. 381, 201 S.E.2d 298 (1973), which states:

Where a tenant in common, claiming in good faith to be the sole owner of the oil and gas interest, leases the property to a third person, the nonconsenting cotenant may recognize the lease and receive his fractional interest in the royalty or reject the lease and receive his fractional part of the oil or gas produced, less his proportionate part of the cost of discovery and production.

■ Under the facts of this case, however, Rickey Drake can not be characterized as a "nonconsenting cotenant." Mr. Drake negotiated the lease with Waco on behalf of his sister. He clearly had notice of the lease and was an active participant in the making of its terms. At the time this lease was executed, both Rickey Drake and Waco were ignorant of his ownership interest in the property. Both parties acted on the good faith—but ultimately mistaken—belief that Karen Drake was the sole owner of the property. At the time the lease was executed, Rickey Drake was not a "nonconsenting cotenant" because he actively negotiated the lease agreement for the benefit of his co-ten-

---

**3.** Syllabus Point 3 of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), states:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate ques-

tions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

ant/sister, Karen Drake.[4]

Waco argues that the proper measure of damages can be found in Syllabus Point 2 of *Cecil v. Clark,* 49 W.Va. 459, 39 S.E. 202 (1901), which held:

> If a tenant in common takes possession of the premises to the exclusion of his co-tenant and lease the same to third parties for the purpose of the mining and removal of the coal therefrom, at a specified price per ton as royalty for the coal so removed, the co-tenant so excluded may require an accounting to him for his just proportion of such royalty, as the proper measure of damage for such waste.

This holding is not directly on-point with the present case, however, because there is no evidence that Karen Drake excluded Rickey Drake from the property. At the time the lease was executed, Karen Drake believed that she was the sole owner of the property and so, consistent with this belief, she did not exclude Rickey Drake from the property.

■ The question in this case is ultimately one of equity. Both parties agreed at oral argument that the accounting for the oil and gas taken is a matter which involves equitable principles. Both Waco and Rickey Drake were ignorant of his ownership interests and both parties bear the blame. Waco should have known Rickey Drake was the co-owner of the property and would have if a proper and accurate title search had been performed. Rickey Drake, as one who was involved in the buying and selling of real estate, should have known his ownership interest in the property. With both parties bearing a portion of the fault here, we are reminded of the equitable principle announced by this Court in *McNeeley v. South Penn Oil Co.,* 58 W.Va. 438, 52 S.E. 480 (1905): "a court of equity ... often departs from dry legal rules in the interest of substantial, even-handed justice." 58 W.Va. at 443, 52 S.E. at 482, *quoting Williamson v. Jones,* 43 W.Va. 562, 590–91, 27 S.E. 411, 422 (1897).

■ With this principle in mind, this Court believes it would be inequitable for Rickey Drake to receive a larger portion of the profits from Waco than he would have received had both parties not been ignorant of his ownership interest at the time the lease agreement was executed. Syllabus Point 2, in part, of *McNeeley, supra,* provides guidance on the form an equitable outcome could take:

> If one co-tenant execute an oil lease, purporting to cover the whole of the common property, under which the lessee produces oil, delivering to the lessor part thereof as royalty, it is proper to require the lessor and lessee jointly to make reparation to the injured co-tenant[.]

■ This Court cannot order the lessor (Karen Drake) and the lessee (Waco) to make joint reparation to Rickey Drake, because the lessor (Karen Drake) has not been sued, by either party, in this case.

■ The Court, guided by equitable principles, holds that when mineral rights have been leased to an oil and gas producer, and a person subsequently learns that he or she was a co-tenant to the land at the time that its mineral rights were leased, but that cotenant cannot be classified as a "nonconsenting co-tenant" as contemplated by Syllabus Point 4 of *Thaxton v. Beard,* 157 W.Va. 381, 201 S.E.2d 298 (1973), such co-tenant is entitled to recover from the lessee only that portion of the royalty to which he or she would have been entitled had he or she been a signatory to the lease.

## IV.

### *Conclusion*

For the foregoing reasons, we answer the certified question as follows:

Where there are two co-tenants (A and B), and both co-tenants mistakenly believe that tenant A is the sole owner of the property; and an oil and gas producer seeks to lease the mineral rights of the property from tenant A, because the oil and gas producer is

---

**4.** Although Waco had an obligation to ascertain the proper owner of the mineral rights, their mistake is not dispositive because of Rickey Drake's involvement in the negotiation of the lease.

also under the mistaken belief that tenant A is the sole owner of the property; and tenant B negotiates with the oil and gas producer on tenant A's behalf and actively participates in the making of the lease agreement, and tenant B discovers after the lease agreement is executed that he owns one-half of the property and subsequently sues the oil and gas producer seeking the value of the gas taken less the cost of production, tenant B is only entitled to the portion of the royalty to which he would have been entitled had both tenants A and B executed the lease.

Certified question answered.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.